# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
      v. )     Criminal Nos. 00-157, 02-045 (RCL)
)
KENNETH SIMMONS )
RONALD ALFRED )
JAMES ALFRED )     **FILED**
FRANKLIN SEEGERS )
DEON OLIVER )     MAR 3 1 2004
KEITH MCGILL )
)     NANCY MAYER WHITTINGTON, CLERK
    Defendants. )     U.S. DISTRICT COURT

## FINAL JURY INSTRUCTIONS

Jury instructions as given by the court in the above-captioned case.

Date: **3-31-04**

Royce C. Lamberth
United States District Judge

TABLE OF CONTENTS

1. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2. FUNCTION OF THE COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

3. FUNCTION OF THE JURY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4. CONSIDER EACH COUNT AND EACH DEFENDANT SEPARATELY . . . . . . . . . . . . 9

5. NATURE OF CHARGES NOT TO BE CONSIDERED . . . . . . . . . . . . . . . . . . . . 10

6. INDICTMENTS NOT EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

7. STATEMENTS AND QUESTIONS BY COUNSEL . . . . . . . . . . . . . . . . . . . 12

8. COMMUNICATIONS AMONG DEFENDANTS' COUNSEL
    AND DUTY OF DEFENSE COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . 13

9. INADMISSIBLE AND STRICKEN EVIDENCE . . . . . . . . . . . . . . . . . . . . . 14

10. EVIDENCE OF ACTS NOT CHARGED IN INDICTMENT . . . . . . . . . . . . . . . . 15

11. INSTRUCTION RE JOINING OF CONSPIRACY . . . . . . . . . . . . . . . . . . . . . 16

12. EVIDENCE IN THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

13. EVIDENCE ADMITTED FOR LIMITED PURPOSES OR
    AGAINST ONE DEFENDANT ONLY . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

14. JURY'S RECOLLECTION CONTROLS . . . . . . . . . . . . . . . . . . . . . . . . . . 19

15. NOTE TAKING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

16. DIRECT AND CIRCUMSTANTIAL EVIDENCE . . . . . . . . . . . . . . . . . . . . . 21

17. TRANSCRIPTS OF TAPE RECORDINGS . . . . . . . . . . . . . . . . . . . . . . . . . 22

18. BURDEN OF PROOF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

19. REASONABLE DOUBT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

20. CREDIBILITY OF WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

21. PRIOR PERJURY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

22. NUMBER OF WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

23. EVALUATION OF PRIOR CONSISTENT
    AND INCONSISTENT STATEMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

24. IMPEACHMENT BY PROOF OF CONVICTION OF A CRIME
    OR PENDING CASE, PROBATION OR PAROLE-WITNESS . . . . . . . . . . . . . 31

25. RIGHT OF DEFENDANT NOT TO TESTIFY . . . . . . . . . . . . . . . . . . . . . . . . 32

26. DEFENDANT AS WITNESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

27. EXPERT TESTIMONY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

28. LAW ENFORCEMENT OFFICER'S TESTIMONY . . . . . . . . . . . . . . . . . . . . 36

29. ACCOMPLICE'S TESTIMONY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

30. WITNESS' PLEA AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

31. WITNESSES WHO ARE USING DRUGS OR ADDICTED . . . . . . . . . . . . . . 40

32. IDENTIFICATION TESTIMONY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

33. IMPERMISSIBLE TO INFER PARTICIPATION
    FROM MERE PRESENCE OR ASSOCIATION . . . . . . . . . . . . . . . . . . . . . . . 43

34. MULTIPLE DEFENDANTS - MULTIPLE COUNTS . . . . . . . . . . . . . . . . . . . 44

35. PUNISHMENT NOT RELEVANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

36. PROOF OF STATE OF MIND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

37. "ON OR ABOUT" PROOF OF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

38. "POSSESSION" – DEFINED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

39. VICARIOUS CULPABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

40. PRELIMINARY FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

41. CONSPIRACY TO VIOLATE NARCOTICS LAWS . . . . . . . . . . . . . . . . . . . . . . . . . 53

41A. CONSPIRACY TO VIOLATE NARCOTICS LAWS FOR DEFENDANT McGILL . . . 63

42. CONSPIRACY TO PARTICIPATE IN A RACKETEERING
INFLUENCED CORRUPT ORGANIZATION . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

43. HOMICIDE — FIRST DEGREE PREMEDITATED MURDER WHILE ARMED . . . . . 71

44. MURDER WHILE ENGAGED IN OR WORKING IN
THE FURTHERANCE OF A CONTINUING CRIMINAL ENTERPRISE . . . . . . . . . . 74

45. VIOLENT CRIME IN AID OF RACKETEERING ACTIVITY . . . . . . . . . . . . . . . . . 81

46. KILLING OR ATTEMPTING TO KILL A WITNESS . . . . . . . . . . . . . . . . . . . . . . . 84

47. ASSAULT WITH INTENT TO COMMIT MURDER . . . . . . . . . . . . . . . . . . . . . . . 86

48. USING AND CARRYING A FIREARM IN RELATION TO A
CRIME OF VIOLENCE OR DRUG TRAFFICKING OFFENSE . . . . . . . . . . . . . . . 88

49. USE OF COMMUNICATION FACILITY TO FACILITATE
A DRUG TRAFFICKING OFFENSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

50. POSSESSION OF A CONTROLLED SUBSTANCE
WITH INTENT TO DISTRIBUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

51. SELF-DEFENSE -- GENERAL CONSIDERATIONS . . . . . . . . . . . . . . . . . . . . . . . 94

52. SELF-DEFENSE -- AMOUNT OF FORCE PERMISSIBLE . . . . . . . . . . . . . . . . . . . 95

53. SELF-DEFENSE -- NO DUTY TO RETREAT . . . . . . . . . . . . . . . . . . . . . . . . . . . 97

54. SELF-DEFENSE -- PAST VIOLENCE BY COMPLAINANT OR DECEDENT . . . . . . . 98

55. DEFENSE OF A THIRD PERSON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99

56. DEFENDANTS' THEORIES OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101

57. SUMMARY CHARTS AND EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109

58. REDACTED DOCUMENTS AND TAPES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110

59. ELECTION OF A FOREPERSON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111

60. UNANIMITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112

61. EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113

62. COMMUNICATIONS BETWEEN COURT AND JURY DURING
     JURY'S DELIBERATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114

63. MEDIA REPORTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115

64. VERDICT FORM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116

65. FURNISHING JURY WITH A COPY OF INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . 117

66. COURT PROCEEDINGS DURING DELIBERATIONS . . . . . . . . . . . . . . . . . . . . . . . 118

67. TAKING THE VERDICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120

68. ALTERNATE JURORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 122

## I.   GENERAL INSTRUCTIONS & DEFINITIONS

### JURY INSTRUCTION NO. 1

#### 1.  INTRODUCTION

Members of the jury, you are about to enter your final duty in this case which is to decide the issues of fact and to return verdicts as to each defendants' innocence or guilt of the charges. I told you at the very start of the trial that your principal function during the taking of testimony would be to listen carefully and to observe each witness who testified. It has been obvious to me and to counsel that you have conscientiously discharged this duty. I ask you now to give me that same careful attention as I instruct you on the law applicable to this case.

## JURY INSTRUCTION NO. 2

### 2. FUNCTION OF THE COURT [2.01]

The function of the Court is to conduct the trial of the case in an orderly, fair and efficient manner, to rule upon questions of law arising in the course of the trial, and to instruct you as to the law that applies in this case.

It is your duty to accept the law as I state it to you. You should consider all the instructions as a whole. You may not disregard any instruction, give special attention to any one instruction, or question the wisdom of any rule of law.

### JURY INSTRUCTION NO. 3

### 3. FUNCTION OF THE JURY [2.02]

The function of the jury is to determine the facts.  You are the sole and exclusive judges of the facts. You alone determine the weight, the effect and the value of the evidence and the credibility of the witnesses.  You should determine what happened without prejudice, fear, sympathy or favor, solely from a fair  consideration of the evidence.  You should not be improperly  influenced by anyone's race, ethnic origin, religion, gender or any other irrelevant consideration.  The actions of the Court during the trial in ruling on motions or objections by counsel or in comments to counsel or in questions to witnesses or in setting forth the  law in these instructions are not to be taken by you as any indication of my opinion as to how you should determine the  issues of fact.  If you believe I have expressed or intimated any opinion as to the facts, you should ignore it.  What the verdicts will be is your sole and exclusive duty and responsibility.

In determining the facts, the jury is reminded that before each member was accepted and sworn to act as to a juror, he or she was asked questions concerning competency, qualifications, fairness and freedom from prejudice and bias.  On the faith of those answers, the juror was accepted by the parties.  Therefore, those answers are as binding on each of the jurors now as they were then, and should remain so, until the jury is discharged from consideration of this case.

JURY INSTRUCTION NO. 4

**4.  CONSIDER EACH COUNT AND EACH DEFENDANT SEPARATELY [2.52]**

A separate crime or offense is charged against one or more of the defendants in each count of the indictment.  Each offense and the evidence pertaining to it should be considered and decided separately.  The fact that you may  find one or more of the accused guilty or not guilty of one of the offenses charged should not control your verdict as  to any other offense or accused charged, except as I may otherwise instruct you.

## JURY INSTRUCTION NO. 5

### 5.  NATURE OF CHARGES NOT TO BE CONSIDERED [2.14]

You are specifically cautioned against permitting the character of any charge itself to affect your minds in arriving at your verdict.  You must permit only the evidence in this case to enter into your deliberations and findings in rendering a fair and impartial verdict.

## JURY INSTRUCTION NO. 6

### 6. INDICTMENTS NOT EVIDENCE [2.06]

You will be provided with copies of the indictments against the defendants. The copy of the indictment in case number 00-157 that has been furnished to you in the jury room has been redacted so that only counts that are relevant for your consideration are included. You should not speculate about what redactions have been made. You are reminded, however, that the indictments are not evidence. An indictment is merely the formal manner of accusing a person of a crime in order to bring him to trial. You must not use the indictments for any purpose other than informing yourselves of the charges you are to consider. In other words, you may not regard the indictments as tending to prove a defendant's guilt or draw any inference of guilt from it. The opening statements and closing arguments of counsel are also not evidence. They are only intended to assist you in understanding the evidence and the contentions of the parties.

There are two indictments in this case that have been joined together for trial. The first indictment names Kenneth Simmons, Ronald Alfred, James Alfred, Franklin Seegers, and Deon Oliver as defendants. The second indictment names Keith McGill as a defendant. As I stated to you, the indictments may only be used by you to inform yourselves of the charges in this case. You should not draw any inferences one way or the other based on the fact that one of the defendants was initially indicted separately and later joined with the others for trial.

The indictments as provided to you for your deliberations will not include certain counts that I read to you in my initial reading of the indictments before opening statement. You should not make any inference, either in favor of or against the Defendants, from the deletion of certain language from the indictment.

11

## JURY INSTRUCTION NO. 7

## 7.  STATEMENTS AND QUESTIONS BY COUNSEL [2.05]

The questions put to the witnesses by counsel are likewise not part of the evidence in the case.  If a lawyer asked a witness a question that contains an assertion of fact, you may not consider the assertion as evidence of that fact unless the fact is elsewhere established by the evidence or the witness adopts the fact in answering the question.

Finally, anything you may have heard or seen outside this courtroom is not evidence and must be disregarded.

### JURY INSTRUCTION NO. 8

### 8. COMMUNICATIONS AMONG DEFENDANTS' COUNSEL
### AND DUTY OF DEFENSE COUNSEL

At times throughout the trial you have heard one defense attorney ask questions regarding a defendant other than his client and to make various objections and arguments on behalf of a defendant not his client. Every criminal defendant in every criminal case is entitled to effective assistance of counsel. Effective assistance of counsel includes the right to confront any person who takes the witness stand and testifies. Whether or not to cross-examine any witness is a matter of strategic choice to be made by counsel for each defendant. You may not draw any negative inference from any defendant's decision to cross-examine or to refrain from cross-examination of any witness. In addition, you may have also noted throughout the trial that counsel for the defendants have consulted with each other and may have divided tasks to expedite the case and minimize duplication.

Indeed, in a case of this length, it's natural for defense counsel to cooperate and consult with one another. These circumstances do not mean that you should regard the defendants as one person or entity. Each defendant is entitled to your separate consideration.

13

## JURY INSTRUCTION NO. 9

### 9.  INADMISSIBLE AND STRICKEN EVIDENCE [2.07]

The lawyers in this case sometimes objected when the other side asked a question, made an argument or offered evidence that the objecting lawyer believed was not proper. You must not be prejudiced against the lawyer who made the objections, nor against his client. It's the duty of counsel to object when the other side offers testimony or other evidence that counsel believes is not properly admissible.

If during the course of the trial I sustained an objection by one lawyer to a question asked by another, you are to disregard the question, and you must not speculate as to what the answer would have been. If the objection was overruled, treat the answer like you would any other.

If after a question was asked and an answer given by a witness, the Court ruled that the objection was sustained, you are to disregard both the question and the answer in your deliberations. Likewise, any other matters to which the Court has sustained an objection or which the Court has ordered you to disregard are not evidence and you must not consider them.

JURY INSTRUCTION NO. 10

**10. EVIDENCE OF ACTS NOT CHARGED IN INDICTMENT**

You have heard testimony of criminal acts purportedly committed by one or more of the defendants with which they are not formally charged in these indictments.  That evidence was admitted for various collateral purposes, such as to show the relationship between the defendants and others involved in their activities, or to show motive, opportunity, intent, preparation, planning, knowledge, identity or absence of mistake or accident with respect to those crimes with which a defendant is actually charged here.

You are instructed that if you find that a defendant did engage in criminal activity not charged to him here, you are not to draw an inference from such a finding that the defendant is a person of bad character and that he must therefore be guilty of the crimes with which he is charged.

In other words, the fact that a defendant broke the law on other occasions not charged in these indictments is not by itself evidence that he committed any offense for which he is now on trial.

15

JURY INSTRUCTION NO. 11

**11. INSTRUCTION RE JOINING OF CONSPIRACY**

You have heard testimony about the murder of Kairi Ball outside the Reeves Center in the early morning hours of May 15, 1995, the 1989 seizure of a kilogram of cocaine from Ronald Alfred, and the 1991 and 1994 gun charges against Ronald Alfred. The defendants, RONALD ALFRED and JAMES ALFRED, are not charged in this indictment for those offenses, so you are not called upon to determine whether they are guilty or not guilty of those offenses. That evidence was admitted only for your consideration in determining whether Ronald Alfred or James Alfred then became members of the Kevin Gray-Rodney Moore drug distribution and RICO conspiracies.

During the course of the trial, the government presented evidence of Franklin Seegers' conduct prior to 1996. That evidence was admitted only as an attempt by the government to explain why and how Mr. Seegers joined the alleged conspiracies. In order to find Mr. Seegers guilty of the charged conspiracies, you must find, unanimously and beyond a reasonable doubt, that he participated in the conspiracies during the time period as charged in the indictment. Mr. Seegers is charged with joining the alleged conspiracies in November of 1996. He is not charged in the indictment with the conduct that occurred before he allegedly joined the conspiracies. Therefore, you shall not be asked to return any verdict as to this conduct.

## JURY INSTRUCTION NO. 12

### 12.  EVIDENCE IN THE CASE [1.04 and 2.04]

I have instructed you on what you must not consider as evidence.  Now I will instruct you as to the evidence that you are to consider. The evidence in this case consists of the sworn testimony of the witnesses, regardless of who may have called them, and all exhibits received into evidence regardless of who may have produced them. Although you are to consider only the evidence in the case, in your consideration of the evidence you are not limited to the literal words uttered by the witnesses. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts that you find have been proved by their testimony, such reasonable inferences as you feel are justified in the light of your experience.

The government and the defendants have stipulated, that is agreed to certain facts.  Any stipulation of fact is undisputed evidence and you may consider it proven.

The Court may take judicial notice of public acts, places, facts and events which are matters of common knowledge, such as court records, or which are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  When the Court takes judicial notice of a particular fact, you may regard that fact as proven  evidence.

## JURY INSTRUCTION NO. 13

## 13.  EVIDENCE ADMITTED FOR LIMITED PURPOSES OR
## AGAINST ONE DEFENDANT ONLY [2.50]

During the trial certain evidence was admitted only for a limited purpose or with respect to one defendant and not against the other defendants.  You may consider such evidence only for that limited purpose or with respect to the defendant against whom it was offered.  You must not consider it otherwise in your deliberations.

## JURY INSTRUCTION NO. 14

### 14.  JURY'S RECOLLECTION CONTROLS

If any reference by the Court or by counsel to matters of evidence does not coincide with your own recollection of the evidence, I instruct you that it is your recollection that should control during your deliberations.

## JURY INSTRUCTION NO. 15

### 15.  NOTE TAKING [1.02]

During the trial I have permitted those jurors who wanted to do so to take notes.  You may take your notes with you to the jury room and use them during your deliberations if you wish.  As I told you at the beginning of the trial, your notes are only to be an aid to your memory, and they should not replace your memory.  Those jurors who have not taken notes should rely on their own memory of the evidence and should not be influenced by another juror's notes, if the notes do not coincide with their memory.  The notes are intended to be for the notetaker's own personal use.  At the end of your deliberations, please tear out from your notebooks any notes that you have made and give them to your foreperson.  The clerk will collect your notebooks and pencils when you return to the courtroom, and I will ask the foreperson to give the clerk your notes when your verdict is announced.  The clerk will give the notes to me and I will destroy your notes immediately after the trial.  No one, including myself, will ever look at your notes.

JURY INSTRUCTION NO. 16

**16.  DIRECT AND CIRCUMSTANTIAL EVIDENCE [2.10]**

You will recall that I told you that you were permitted to draw reasonable inferences from the testimony of the witnesses.  That is because the law recognizes two types of evidence from which you may find the truth as to the facts of a case:  direct evidence and circumstantial evidence.

Direct evidence is the testimony of a person who asserts actual knowledge of a fact, such as an eyewitness who testifies to what he saw or a participant who testifies as to what he did. Circumstantial evidence is proof of a chain of facts and circumstances that enable you to draw inferences that may indicate the guilt or innocence of a defendant. The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  No greater degree of certainty is required of circumstantial evidence than of direct evidence.  In reaching a verdict in this case, you should  weigh all of the evidence presented, whether it is direct or circumstantial.

21

JURY INSTRUCTION NO. 17

## 17.  TRANSCRIPTS OF TAPE RECORDINGS

Tape recordings of conversations identified by witnesses have been received in evidence. Transcripts of these tape recorded conversations are being furnished for your convenience and guidance as you listen to the tapes to clarify portions of the tape which are difficult to hear, and to help you identify speakers. The tapes, however, are evidence in the case; the transcripts are not evidence. If you perceive any variation between the transcripts and the tapes, you must be guided solely by the tapes and not by the transcripts. If you cannot determine from the tape that particular words were spoken, you must disregard the transcripts so far as those words are concerned.

## JURY INSTRUCTION NO. 18

## 18.  BURDEN OF PROOF [2.08]

Now I must instruct you on the burden of proof.  Each and every defendant in a criminal case is presumed to be innocent.  This presumption of innocence remains with the defendant throughout the trial unless and until he is proven guilty beyond a reasonable doubt.  The burden is on the government to prove the guilt of each and every defendant on each and every offense charged in the indictment beyond a reasonable doubt.  This burden of proof never shifts throughout the trial.  The law does not require a defendant to prove his innocence or to produce any evidence.  As a result of a defendant's plea of not guilty the burden is on the prosecution to prove guilt beyond a reasonable doubt.  This burden never shifts to a defendant for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.  Each defendant begins the trial here with a clean slate. This presumption of innocence alone is sufficient to acquit a defendant unless you as jurors are unanimously convinced beyond a reasonable doubt of his guilt, after a careful and impartial consideration of all of the evidence in this case. If the government fails to sustain its burden, you must find the defendant not guilty.  If you find that the government has  proven beyond a reasonable doubt every element of an offense with which a defendant is charged, it is your duty to find that defendant guilty.

### JURY INSTRUCTION NO. 19

### 19.  REASONABLE DOUBT [2.09]

In a criminal case, the government has the burden of proving each defendant guilty beyond a reasonable doubt.  In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases that its truth is highly probable.  In criminal cases, such as this one, the government's proof must be more powerful than that.  It must be beyond a reasonable doubt.

Reasonable doubt, as the name implies, is a doubt based upon reason -- a doubt for which you have a reason based upon the evidence or lack of evidence in the case.  If, after careful, honest and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life.  However, it is not an imaginary doubt, nor a doubt based upon speculation or guesswork; it is a doubt based upon reason.  The government is not required to prove guilt beyond all doubt or to a mathematical or scientific certainty.  Its burden is to prove guilt beyond a reasonable doubt.

## JURY INSTRUCTION NO. 20

## 20. CREDIBILITY OF WITNESSES [2.11]

In determining whether the government has established the charges against each defendant beyond a reasonable doubt, you must consider and weigh the testimony of all the witnesses who have appeared before you.  You are the sole judge of the credibility of the witnesses. In other words, you alone are to determine whether to believe any witness and the extent to which any witness should be believed.

In reaching a conclusion as to the credibility of any witness, and in weighing the testimony of any witness, you may consider any matter that may have a bearing on the subject.  You may consider the demeanor and the behavior of the witness here on the witness stand; the witness' manner of testifying; whether the witness impresses you as a truthful individual; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had a full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case, or friendship or animosity toward other persons concerned with this case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony.  Two or more persons witnessing an incident or transaction may see or hear it differently.  An innocent misrecollection, like failure of recollection, is not an uncommon experience in life.  In weighing the effect of the discrepancy, always consider whether it pertains to a matter of important or unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate. You may consider whether the witness has been contradicted or corroborated by other credible evidence. If you believe that any witness has shown himself or herself to be biased or prejudiced, for or against either side of this trial, you may consider and determine whether such bias or prejudice has so colored the testimony of such witness so as to affect the desire and capability of that witness to tell the truth. You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

Several witnesses have acknowledged that they have conferred with counsel in advance of their testimony. You are instructed that it is lawful and proper and, indeed, to be expected that the attorney who proposes to call a witness will confer with the witness before trial. The purpose of such a conference is to enable counsel to ascertain what the witness knows of his own personal knowledge and the extent to which the witness' testimony will be admissible in evidence. The purpose is also to alert the witness as to what he will be asked to enable him to focus his recollections.

## JURY INSTRUCTION NO. 21

### 21.  PRIOR PERJURY [2.25]

There has been evidence that a witness who testified at this trial acknowledged that he lied under oath at a prior proceeding or another proceeding.  The testimony of such a witness should be viewed cautiously and scrutinized with great care.

JURY INSTRUCTION NO. 22

## 22. NUMBER OF WITNESSES [2.13]

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side. Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses to believe. It is possible that you may find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side.

JURY INSTRUCTION NO. 23

### 23. EVALUATION OF PRIOR CONSISTENT AND INCONSISTENT STATEMENTS [1.10-1.11]

You have heard evidence that some witnesses made a statement on an earlier occasion and that this statement may be inconsistent with his/her testimony here at trial. This earlier statement was brought to your attention to help you in evaluating the witness' believability here in court. In other words, if on an earlier occasion the witness made a statement that is inconsistent with his/her testimony in court, you may consider the inconsistency in judging the credibility of the witness. You may not consider this earlier statement as proof that what was said in the earlier statement was true.

It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact inconsistent with the witness' testimony here.

You have also heard evidence that some witnesses made an earlier statement under oath, subject to the penalty of perjury at a prior trial, proceeding or grand jury session and that this statement may be inconsistent with his/her testimony here at trial. This earlier statement was brought to your attention both to help you in evaluating the believability of the witness and as evidence in this case. In other words, if you find that the earlier statement is inconsistent with the witness' present testimony in court, you may consider this inconsistency in judging the credibility of the witness. In addition, you may consider this earlier statement as proof that what was said in the earlier statement was true.

You have heard evidence that some witnesses made a statement on an earlier occasion and that this statement may be consistent with his/her testimony here at trial. This earlier statement was brought to your attention both to help you in evaluating the believability of the witness and as

evidence in this case. In other words, if you find that the earlier statement is consistent with the witness' present testimony in court, you may consider this consistency both in judging the credibility of the witness here at trial and as proof that what was said in the earlier statement was true.

It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact consistent with the witness' in-court testimony here.

## JURY INSTRUCTION NO. 24

### 24.  IMPEACHMENT BY PROOF OF CONVICTION OF A CRIME OR PENDING CASE, PROBATION OR PAROLE-WITNESS [1.12 & 1.12A]

The testimony of a witness may be discredited or impeached by showing that he or she has been convicted of a crime.  A witness's prior criminal conviction is admitted into evidence solely for your consideration in evaluating his or her credibility as a witness.  You may consider the prior conviction only in connection with your evaluation of the credence to be given the witness's present testimony in court. [1.12]

You have heard evidence that certain witnesses are on probation, parole, charged with a crime or awaiting sentence. You may consider this fact when deciding whether or not the witness has a bias in favor of one party or another that may affect his/her desire or willingness to tell the truth. [1.12A]

## JURY INSTRUCTION NO. 25

## 25.  RIGHT OF DEFENDANT NOT TO TESTIFY [2.27]

Every defendant in a criminal case has the  absolute right not to testify.  You must not draw any inference of guilt against any defendant because he did not testify.

## JURY INSTRUCTION NO. 26

### 26. DEFENDANT AS WITNESS [2.28]

The defendant has a right to become a witness in his own behalf.  His testimony should not be disbelieved merely because he is the defendant.  In weighing his testimony, however, you may consider the fact that the defendant has a vital interest in the outcome of this trial.  As with the testimony of any other witness, you should give the defendant's testimony such weight as in your judgment it is fairly entitled to receive.

During his testimony, defendant Keith McGill repeatedly claimed that the prosecutors are under investigation for their handling of this case.  I specifically instruct you that this testimony on that subject was not in response to any question posed to him and was impermissible.  I also instruct you that there is no evidence that the prosecutors are being investigated in any way in connection with this case.  I therefore specifically instruct you to disregard defendant McGill's testimony in that regard.

During his testimony, defendant Keith McGill repeatedly referred to a voice expert rendering opinions one way or another on particular taped recordings of telephone conversations.  Again, his testimony in that regard was not in response to any question and was impermissible.  Further, I have ruled as a matter of law that any such testimony by purported experts regarding voice identifications unreliable and by law, is not admissible evidence.  Accordingly, I specifically instruct you to disregard defendant McGill's testimony regarding any alleged voice analysis or voice identification analysis.

I want to provide you with further instruction on the actions of defendant Keith McGill in court yesterday during the government's rebuttal argument.

Mr. McGill displayed and made reference to a security device that he was wearing. As you know, during the course of this trial, the Court has determined that it was necessary to take certain security precautions. However, the Court has never found it necessary to actually activate the device Mr. McGill was wearing.

I instruct you that you are not to consider Mr. McGill's outburst in any way as evidence in this case, either with respect to him or with respect to the other defendants. Further, the Court's decision to adopt certain security precautions is not evidence in this case. You may not consider these measures at all in reaching your verdicts.

## JURY INSTRUCTION NO. 27

## 27. EXPERT TESTIMONY [1.08]

Ordinarily, the rules of evidence do not permit witnesses to testify as to opinions or conclusions. But there is an exception to this rule for expert witnesses. Experts are allowed to give opinions or conclusions because they have become expert in some art, science, profession or calling. They may give their opinions or conclusions, and reasons for their opinions.

In this case, the court has permitted several witnesses to testify as experts. Doctors Juste and Pierre-Louis from the D.C. Medical Examiner's Office were permitted to testify as experts concerning forensic pathology. Detectives Leon Krebs and FBI Agent Steve Casper were permitted to testify as experts concerning Firearms Examination and Toolmark Identification. FBI Agent Jim Rettberg was permitted to testify as an expert in the field of fingerprint identification. Finally, DEA Chemist Jerry Walker was permitted to testify as an expert concerning Analytical Chemistry and the Analysis of Controlled Substances.

You are not bound by an expert's opinion. If you find that the opinion is not based on sufficient education or experience, that the reasons supporting the opinion are not sound, or that the opinion is outweighed by other evidence, you may completely or partially disregard the opinion. In other words, give the opinion the weight you think it deserves after you consider it along with all the other evidence.

## JURY INSTRUCTION NO. 28

### 28.  LAW ENFORCEMENT OFFICER'S TESTIMONY [2.26]

A law enforcement officer's testimony should be considered by you just as any other evidence in the case. In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness.  In no event should you give either greater or lesser credence to the testimony of any witness merely because that witness is a law enforcement officer.

## JURY INSTRUCTION NO. 29

### 29. ACCOMPLICE'S TESTIMONY [2.22]

Accomplices in the commission of a crime are competent witnesses and the government has a right to use them as witnesses.   An accomplice is anyone who knowingly and voluntarily cooperates with, aids, assists, advises or encourages another person in the commission of a crime, regardless of his/her degree of participation. The testimony of an alleged accomplice should be received with caution and scrutinized with care.  You should give it such weight as in your judgment it's fairly entitled to receive.  You may convict a defendant upon the uncorroborated testimony of an alleged accomplice only if you believe that the testimony of the alleged accomplice proves the guilt of the defendant beyond a reasonable doubt.

## JURY INSTRUCTION NO. 30

### 30.  WITNESS' PLEA AGREEMENT

In this case, there has been testimony from government witnesses who pled guilty after entering into an agreement with the government to testify.  There is evidence that the government agreed to bring the witness' cooperation to the attention of the sentencing court.  Plea agreements, grants of immunity, and consideration for reduced sentences based upon cooperation and testimony in the trial of others are recognized as legitimate tools of law enforcement.  The wisdom of a plea agreement and decision of prosecutors not to prosecute persons involved in criminal conduct are the exclusive decision for the prosecution and not matters for your consideration.  Sentencing decisions are the exclusive responsibility of the Court once a plea agreement is entered into by the parties. Likewise, a further reduction in the sentence of cooperating witnesses is the exclusive decision of the Court based upon the government's motion for a sentence reduction upon the filing of such a motion.  The Court is free to exercise its independent decision as to whether to grant the motion and, if granted, the extent of the departure from either a mandatory minimum or a sentence below the United States Sentencing Guidelines.

Certain of the plea agreements that we have been discussing have been admitted into evidence to assist you in assessing the credibility of these witnesses.  In some of them, the witnesses have admitted their own complicity in, and guilt of, some of the very crimes with which these defendants are also charged.  I instruct you that the plea agreements and the witnesses' admission of their own guilt, are not evidence of the guilt of the defendants now n trial.  The plea agreements have been admitted into evidence to enable you to take them into consideration in determining the credibility of the testimony the witnesses have given that implicates the defendants in those crimes

as well.

Some portions of the plea agreements have been redacted - that is edited.  The portions that have been redacted are not relevant for your consideration and you should not speculate about the redactions made.

JURY INSTRUCTION NO. 31

**31.  WITNESSES WHO ARE USING DRUGS OR ADDICTED .**

There has been testimony presented at the trial from witnesses who may have been addicted to or using drugs when the events they observed took place.  I instruct you that there is nothing improper about calling such witnesses to testify about events within their personal knowledge. On the other hand, this testimony must be examined with greater caution than the testimony of other witnesses.  The testimony of a witness who was using drugs at the time of the events he or she is testifying about may be less believable because of the effect the drugs may have had on his or her ability to perceive, recall, or relate the events in question.  If you decide to accept the testimony of such a witness, after considering it in light of all the evidence in this case, then you may give it whatever weight, if any, you find it deserves.

## JURY INSTRUCTION NO. 32

### 32.  IDENTIFICATION TESTIMONY [5.06]

The burden is on the government to prove beyond a reasonable doubt, not only that an offense was committed as alleged in the indictment, but that the defendant charged with the offense was the person who committed it.  In considering whether the government witnesses have proved beyond a reasonable doubt that the defendant is the person who committed the offense, you may consider any one or more of the following:

1.     The witness's opportunity to observe the criminal acts and the person committing them, including the length of the encounter, the distance between the various parties, the lighting conditions at the time, the witness' state of mind at the time of the offense, and other circumstances affecting the witness' opportunity to observe the person committing the offense that you deem relevant;

2.     Any subsequent identification, failure to identify, or misidentification by the witness, the circumstances surrounding that identification, the certainty or lack of certainty expressed by the witness, the state of mind of the witness at the time, and other circumstances bearing on the reliability of the witness' identification that you deem relevant; and

3.     Any other direct or circumstantial evidence that may identify the person who committed the offense charged or corroborate or negate the identification by the witness.

You must be satisfied beyond a reasonable doubt of the accuracy of the identification of a defendant before you may convict him.  If the circumstances of the identification of the defendant

are not convincing beyond a reasonable doubt, you must find the defendant not guilty.

## JURY INSTRUCTION NO. 33

### 33.  IMPERMISSIBLE TO INFER PARTICIPATION
### FROM MERE PRESENCE OR ASSOCIATION

You may not find that a defendant is guilty of participating in criminal conduct merely from the fact that he may have been present at the time and place a crime was being committed and had knowledge that it was being committed. Likewise, you may not find that a defendant is guilty of participating in criminal conduct merely from the fact that he associated with, was a family member of, or lived with other people who were guilty of wrongdoing.

## JURY INSTRUCTION NO. 34

### 34.  MULTIPLE DEFENDANTS - MULTIPLE COUNTS [2.52 and 2.54]

Unless I have instructed you otherwise, you should consider each instruction that the Court has given to apply separately and individually to each defendant on trial. Likewise, you should give separate consideration and render separate verdicts with respect to each defendant. Each defendant is entitled to have his guilt or innocence of the crime for which he is on trial determined from his own conduct and from the evidence that applies to him, as if he were being tried alone. The guilt or innocence of any one defendant should not control or influence your verdict as to the other defendants. You may find any one or more of the defendants guilty or not guilty on any one or more of the counts in the indictment. At any time during your deliberations, you may return your verdict of guilty or not guilty with respect to any defendant on any charge, after which you will resume your deliberations as to the other remaining defendants and charges.

A separate offense is charged in each of the counts of the indictment that you are to consider. Each offense, and the evidence that applies to it, should be considered separately, and you should return separate verdicts as to each count. Except as I have otherwise instructed you, the fact that you may find a defendant guilty or not guilty of any one count of the indictment should not control or influence your verdict with respect to any other count of the indictment.

## JURY INSTRUCTION NO. 35

### 35.  PUNISHMENT NOT RELEVANT [2.74]

You are instructed that the question of possible punishment of these defendants in the event of conviction is no concern of the jury and should not enter into or influence your deliberations in any way.  The duty of imposing sentence in the event of conviction rest exclusively with me.  You should weigh the evidence in the case and determine the guilt or innocence of each defendant solely upon the basis of such evidence, without any consideration of the matter of punishment.  As I instructed you previously, the death penalty is not applicable to these defendants.

45

## JURY INSTRUCTION NO. 36

### 36.  PROOF OF STATE OF MIND [3.02]

Some of the elements of the offenses upon which I will instruct you require proof by the government of a certain "state of mind," signified by using terms like "intentional" or "knowing." Someone's intent or knowledge ordinarily cannot be proved directly because there is no way of looking directly into the workings of the human mind; however, you may infer a defendant's intent or knowledge from the surrounding circumstances.

You may consider any statements made or acts done or not done by the defendants, and all other facts and circumstances received in evidence that may indicate the defendant's intent or knowledge. You may infer, but you are not required to infer, that a person intends the natural and probable consequences of acts knowingly done by him.  It is entirely up to you, however, to decide what facts to find from the evidence  received during this trial.   You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a  reasonable doubt that a defendant acted with the necessary state of mind.

## JURY INSTRUCTION NO. 37

### 37.  "ON OR ABOUT" PROOF OF [3.07]

You will note that the indictment charges that some offenses were committed "on or about" a particular date. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

## JURY INSTRUCTION NO. 38

### 38. "POSSESSION" – DEFINED [3.08]

A term that you will encounter frequently in these instructions is "possession." You should understand that "possession" does not mean "ownership." One can possess something without owning it. The law recognizes two kinds of possession: actual possession and constructive possession. A person has actual possession of something if he has direct physical control over it. A person has constructive possession of something when he does not have direct physical control over it, but knowingly has both the power and the intent at a given time to control it, either by himself or through another person.

The law also recognizes that possession may be sole or joint. If one person alone has either actual or constructive possession of an item, that possession is sole. If two or more persons share either actual or constructive possession of an item, possession is joint. In any event, whenever you are required to find that a defendant possessed something, a finding of any kind of possession -- actual or constructive, sole or joint -- is sufficient. I instruct you, however, that mere presence in the vicinity of a piece of property or simple knowledge of its physical location does not constitute possession.

You may find that the requirements for possession of property are satisfied only if you find that the government has proven beyond a reasonable doubt that a defendant had actual or constructive possession of the property, either alone or jointly with others.

JURY INSTRUCTION NO. 39

### 39. VICARIOUS CULPABILITY

<u>Willfully Causing an Act to be Done</u>

You may find a defendant guilty of a crime charged in the indictment without finding that he personally committed each of the acts that make up the crime or that he was even present at the scene of the crime.  In other words, there are several ways in which the law recognizes that a defendant can be found guilty of a criminal act perpetrated by another person, and it is not necessary that you find that the defendant was even actually present where and when the crime was committed. A defendant is responsible for an act that he willfully causes to be done if the act would be criminal if performed by him directly or by another.  To cause an act to be done means to bring it about.  You may convict the defendant of the offense charged if you find that the government has proven beyond a reasonable doubt each essential element of the offense and that the defendant willfully caused such an act to be done by another, with the intent to commit the crime.

<u>Aiding and Abetting</u>

Any person who in some way intentionally participates in the commission of a crime aids and abets the principal offender.  The law regards him as guilty of the crime as he would be if he had personally committed each of the acts that make up the crime. To find a defendant aided and abetted in committing a crime, you must find that the defendant knowingly associated himself with the person or persons who committed the crime, that he participated in the crime as something he wished to bring about, and that he intended by his actions to make it succeed. Some affirmative conduct by the defendant is necessary.  Mere physical presence by the defendant at the place and time the crime is committed is not by itself sufficient to establish his guilt, unless his presence is intended to help

49

the principal offender and, in fact, does help him. It is not necessary that you find that the defendant was actually present when the crime was committed.

The government is not required to prove that anyone discussed or agreed upon a specific time or method of committing the crime. The government is not required to prove that the crime was committed in the particular way planned or agreed upon. Nor does the government need to prove that the principal offender and the person alleged to be the aider and abettor directly communicated with each other. And it is not necessary that all the people who committed the crime be caught or identified.

An aider and abettor is legally responsible for the acts of other persons that are the natural and probable consequence of the crime in which he intentionally participates. For example, an aider and abettor is legally responsible for the principal's use of a weapon during an offense if the aider and abettor had actual knowledge that some type of weapon would be used or if it was reasonably foreseeable to the aider and abettor that some type of weapon was required to commit the offense. It is sufficient to find a defendant guilty if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted the principal offender or offenders in committing the crime.

<u>An Act In Furtherance of a Conspiracy</u>

Once the government has proved the existence of a charged conspiracy, and that a particular defendant was a member of that conspiracy, that defendant can be found guilty of a substantive offense based upon the acts of a coconspirator as long as the act was done in furtherance of the conspiracy, was within its scope, and could be reasonably foreseen by the defendant as a necessary or natural consequence of the unlawful agreement.

## JURY INSTRUCTION NO. 40

### 40. PRELIMINARY FACTS

The law requires that the jury make findings of certain preliminary facts that must precede a finding of the ultimate fact of any defendant's guilt of any charge.  Some of those preliminary facts must be made a matter of record on the verdict form.  Others need not be recorded, but all of you must, nevertheless, be convinced beyond a reasonable doubt that they have been proved by the evidence in order to return a verdict of guilt of a particular defendant.  Otherwise, your verdict must be not guilty as to that defendant.  In other words, your findings with respect to preliminary facts, even if not recorded, must be unanimous.

The facts that you must find, but need not record, are known as elements.  They refer to the component parts of a particular substantive crime.  For example, if a defendant is charged with possession of a controlled substance with the intent to distribute it, to find him guilty you must all be agreed that the evidence proves beyond a reasonable doubt that the defendant possessed something, as the term "possessed" was defined to you, and that what was possessed was, in fact, a controlled substance; that at the time the defendant possessed it, he knew it to be a controlled substance; and that he intended to distribute it; that is, to transfer possession of all or part of it to someone else for whatever reason. Facts as to which you will be required to record your findings are alleged in the Counts charging each defendant with what is known as a RICO conspiracy.  These facts are referred to as "Racketeering Acts," and the reason you must record them is to make sure your determinations are consistent with the statute. In addition, with respect to the narcotics conspiracy charged in Count One, if you find that such a conspiracy existed, you will have to make and record findings as to whether the quantity of any controlled substances involved met or exceeded

the amounts thereof charged.

## II. CRIMES CHARGED IN INDICTMENT

### JURY INSTRUCTION NO. 41

### 41.  CONSPIRACY TO VIOLATE NARCOTICS LAWS
### 21. U.S.C. § 846

I will now instruct you on Count One, which is the charge of conspiracy to violate the

narcotics laws.  I will explain to you the particular elements of the crimes charged in the indictment.

All of the defendants are charged in Count One of each indictment with participating in a conspiracy

to violate narcotics laws.  Count One of the indictment in case case no. 00-157 charges, in pertinent

part, that from sometime in 1988 and continuing thereafter to and including November 2000, within

the District of Columbia and elsewhere, the defendants, Kenneth Simmons, Ronald Alfred, James

Alfred, Franklin Seegers and Deon Oliver, did unlawfully, knowingly, and intentionally combine,

conspire, confederate, and agree together, and with other coconspirators, to unlawfully, knowingly,

and intentionally possess with intent to distribute and to distribute a mixture and substance

containing a detectable amount of a narcotic drug controlled substance in violation of Title 21,

Sections 841 and 846 of the United States Code.  Specifically, each defendant is charged with

conspiring to unlawfully, knowingly, and intentionally distribute and to possess with intent to

distribute mixtures and substances of the following controlled substances: cocaine, also referred to

as cocaine powder; cocaine base, also known as crack; heroin and marijuana. The conspiracy charged

in Count One of the indictment is a separate and different offense from the underlying crimes that

are the alleged purpose of the conspiracy.  A conspiracy to commit a crime is itself a crime.  This

is so because the essence of the offense of conspiracy is an unlawful agreement or understanding

between two or more people to violate some law or laws, and it is against the law to agree with

someone else to commit a crime, even if the crime itself was never completed.

The law against conspiracies reflects the fact that criminal activity is more likely to be successful when it engages the efforts of more than one person. Because the crime of conspiracy is an entirely separate and different offense from the underlying crimes that are the conspiracy's purpose, you may find a defendant guilty of the crime of conspiracy to commit a crime even if that underlying crime was never committed. A conspiracy is simply a combination of two or more persons to accomplish an unlawful purpose. It is a partnership in crime. In that connection, I should mention specifically that section D of Count One of the indictment entitled "Overt Acts" lists so-called Overt Acts describing various activities engaged in by the alleged coconspirators to advance the purposes of the conspiracy. Proof of an overt act is not an element of the charge of a narcotics conspiracy. The government is not obliged to prove any particular one or more of the Overt Acts beyond a reasonable doubt, although it must prove beyond a reasonable doubt the existence of the conspiracy itself and a defendant's knowing and wilful participation in it, as I will explain shortly.

At a later point in these instructions, I will be instructing you about Racketeering Acts in relation to the RICO conspiracy charges.

### First Element

Returning to the subject of Count One, you must consider separately the issue of each defendant's participation. Specifically, for you to find a defendant guilty of conspiracy, the government must prove each of the following elements beyond a reasonable doubt: First, that beginning sometime in 1988 and continuing thereafter until and including November 2000, an agreement existed between at least two people to commit a federal crime, namely to knowingly and

intentionally distribute, or to possess with the intent to distribute a detectable amount of one or more of the controlled substances in the indictment, cocaine, also referred to as cocaine powder; cocaine base, also known as crack; heroin and/or marijuana. The agreement does not have to be in writing, or even to be an express or formal plan in which everyone who was involved sat down together and worked out all the details. The agreement may be very informal, and existence of such an agreement may have to be inferred from the circumstances and conduct of the parties, because conspiracies ordinarily are characterized by secrecy. But the government must prove beyond a reasonable doubt that there was a common understanding among those who were involved to commit a crime. So, the first thing that must be shown is the existence of an agreement.

It is not essential that the government prove that the conspiracy began or ended on the specific dates set forth in the indictment or that the conspiracy was in existence for any particular length of time. The government is required to prove beyond a reasonable doubt, however, that the conspiracy charged existed in fact for some time within the period set forth in the indictment, sometime in 1988 until November, 2000.

<u>Second Element</u>

The second element of the offense, which the government must prove beyond a reasonable doubt, is that a particular defendant knowingly and willfully participated in the conspiracy and did so with the specific intent to distribute, or to possess with the intent to distribute, a mixture and substance containing a detectable amount of cocaine also referred to as powder cocaine, cocaine base, also referred to as crack, marijuana, or heroin. The government must show the particular defendant's membership in the conspiracy. That defendant need not know the identities or the number of all the other members of the conspiracy, nor all of the details of the conspiracy, nor the

means by which its purposes were to be accomplished.  Each member of the conspiracy may perform separate and distinct acts.  It is necessary, however, that the government prove beyond a reasonable doubt that a particular defendant was aware of the common purpose, had knowledge that the conspiracy existed, and was a willing participant with the intent to advance the purposes of the conspiracy.

An act is done willfully if it's done knowingly, intentionally, and deliberately. In other words, before you may find that a defendant has become a member of a conspiracy, the evidence in the case must prove to you beyond a reasonable doubt that the defendant knowingly participated in the unlawful plan with the intent to advance or further some objective or purpose of the conspiracy.  To participate knowingly means to do so voluntarily and intentionally, and with the specific intent to do something that is against the law, and not because of mistake,  inadvertence, or accident. Although one may become a member of a conspiracy without full knowledge of all the details, a person who has  no knowledge of or intent to join the conspiracy, but just  happens to act in a way that is of benefit to the conspiracy, or to a conspirator, does not thereby himself become a conspirator.  Evidence of friendship or association, or even familial relationship with alleged conspirators, without evidence of knowing participation does  not permit an inference of guilt.

Furthermore, a simple buyer-seller relationship alone does not make out a conspiracy.  A buyer-seller relationship, however, may be sufficient if it's coupled with other evidence indicating a common purpose, such as an ongoing or continuing relationship, multiple sales, sales on credit or fronting, an awareness that the drugs purchased by the buyer are to be resold, or knowledge of a broader illegal venture.  There can be no conspiracy if the only person the defendant conspires with is a government agent.  Additionally, where the quantity involved is sufficiently large, an inference

may be drawn that an implicit agreement exists for one defendant to supply another defendant with narcotics for resale on an ongoing basis.

It is not necessary that the government prove that a defendant was a member of the conspiracy from its beginning.  Different persons may become members of the conspiracy at different times.  One who knowingly joins an existing conspiracy is charged with the same blame or culpability as though he had been one of the original members of the conspiracy.  And you are reminded that it is not necessary in order to convict a defendant of a charge of conspiracy that the objectives or purposes of the conspiracy were achieved or accomplished.  The ultimate success or failure of the conspiracy is irrelevant. You must, of course, first determine whether the government has proved beyond a reasonable doubt that the conspiracy existed.

The indictment charges that the defendants were members of one single conspiracy to distribute illegal narcotics.  One of the issues you must decide is whether there were really two or more separate conspiracies to distribute illegal narcotics.  The government must convince you beyond a reasonable doubt that each defendant was a  member of the conspiracy charged in the indictment.  If the government fails to prove this as to a defendant, you must find that defendant not guilty of the conspiracy charge, even if you find that he was a member of some other conspiracy. Proof that a defendant was a member of some other conspiracy is not enough to convict.  But proof that a defendant was a member of some other conspiracy would not prevent you from returning a guilty verdict, if the government also proved that he was a member of the conspiracy charged in the indictment.

In making this determination, you should consider whether the conspirators share a common goal, such as to possess and distribute narcotics for profit; to enrich the members of the conspiracy;

to create, maintain and control a market place for the distribution of controlled substances; to enforce discipline among members of the conspiracy; to collect monies owed to members of the conspiracy; to protect the conspiracy and its members from detection, apprehension and prosecution by law enforcement; to prevent and retaliate against acts of violence perpetrated against members of the conspiracy; and to promote and enhance the reputation and standing of the conspiracy and its members. You may also consider the extent to which members of the conspiracy depended on one another to accomplish the goal of narcotics distribution, the overlap of participants in the various operations of the conspiracy, and the quality, frequency, and duration of each conspirator's transactions.

You may find that there was a single conspiracy despite the fact that there were changes in either personnel or activities, or both, so long as you find that two or more persons continued to act for the entire duration of the conspiracy for the purposes charged in the indictment. The fact that the members of a conspiracy are not always the same does not necessarily imply that separate conspiracies exist. If you find that a single conspiracy existed, you will be obliged to consider the agency relationship among coconspirators. This is a concept you will encounter throughout much of your deliberations, as later instructions will demonstrate. Briefly stated, however, a member of a conspiracy who commits another crime during the existence or life of the conspiracy, and who commits this other crime in order to further or somehow advance the goals or objectives of the conspiracy, may be found by you to be acting as the agent of the other members of the conspiracy if the other crime is reasonably foreseeable and in furtherance of the conspiracy. The illegal actions of this person in committing this other crime may be attributed to others who are then members of the conspiracy. Therefore, a defendant may be found guilty of this other crime even though he did

58

not participate directly in the acts constituting that offense or was not present at its commission.  In this connection, I refer you to the court's instruction Number 39 on vicarious liability.

You also may consider even non-criminal acts and the statements of any other member of the alleged conspiracy during and in furtherance of the conspiracy as evidence against a defendant whom you have found to be a member of it.  When people enter into a conspiracy, and thus act as agents for each other, the acts or statements of one conspirator during the existence of the conspiracy are considered the acts or statements of all the other conspirators and can be regarded as evidence against them all.

<u>Drug Quantity</u>

Finally, as I told you earlier, the government is required to prove beyond a reasonable doubt, with respect to any defendant found guilty of Count One, a threshold amount, if any, of controlled substances involved in the conspiracy and the amount, if any, of controlled substances for which each defendant is responsible.  On these issues, you will have to record your findings. First, with respect to each defendant you must unanimously agree which, if any, one or more of the specified controlled substances -- that is, cocaine, also referred to as cocaine powder; cocaine base, also known as crack cocaine; marijuana and heroin -- was involved in the conspiracy.

Second, with respect to any defendant for whom you return a guilty verdict on Count One, you must make a determination as to the quantity, if any, of the controlled substance for which each defendant is responsible. You will be asked to complete a verdict form specifying whether the government has proven beyond a reasonable doubt whether a mixture or substance containing or including cocaine, also referred to as powder cocaine, cocaine base, also known as crack cocaine, heroin and/or marijuana exceeded  specified quantity, expressed in kilograms and grams of cocaine,

also referred to as cocaine powder; cocaine base, also known as crack cocaine; marijuana and/or heroin that you have found that defendant possessed with intent to distribute or distributed, or could have reasonably foreseen the possession with intent or distribution of. Specifically, the verdict form will ask you to decide whether the amount of cocaine, also known as powder cocaine, was:

1. Five kilograms or more of mixtures and substances containing a detectable amount of cocaine, also referred to as powder cocaine. If you are unable to find unanimously that the quantity of cocaine exceeded 5 kilograms, then you should consider whether the drug quantity was:

2. More than 500 grams but less than 5 kilograms of mixtures and substances containing a detectable amount of cocaine, also known as cocaine powder.

Your decision if one of these drug quantity ranges has been proven must be unanimous.

The verdict form also will ask you to decide whether the amount of cocaine base, also known as crack cocaine, was:

1. Fifty grams or more of mixtures and substances containing a detectable amount of cocaine base, also known as crack cocaine. If you are unable to find unanimously that the amount of cocaine base exceeded 50 grams, then you should consider whether the drug quantity was:

2. More than 5 grams but less than 50 grams of mixtures and substances containing a detectable amount of cocaine base, also known as crack cocaine.

Your decision if one of these drug quantity ranges has been proven beyond a reasonable doubt must be unanimous.

If you find a defendant guilty of conspiracy involving heroin, the verdict form also will ask you to decide whether the amount of heroin, was:

1.    One kilogram or more of mixtures and substances containing a detectable amount of heroin.  If you are unable to agree unanimously that the quantity of heroin exceeded 1 kilogram, then you should consider whether the drug quantity was:

2.    More than 100 grams but less than 1 kilogram of mixtures and substances containing a detectable amount of heroin.

Your decision if one of these drug quantities has been proven beyond a reasonable doubt must be unanimous.  In determining quantity, you must determine the total weight of any mixture and substance that contains a detectable amount of cocaine, also known as cocaine powder, cocaine base, also known as crack cocaine, and heroin.  It is the entire weight of the mixture and substance that controls your determination.

In making the determination of drug quantities for each defendant, you are instructed that a defendant is responsible for those drugs that he agreed would be distributed or possessed with intent to distribute, and those drug amounts distributed or possessed with intent to distribute by other coconspirators which the defendant reasonably could have foreseen would be distributed or possessed in furtherance of the conspiracy.  In other words, a defendant is responsible for not only his own actions but also for those of his coconspirators if those actions were known or reasonably foreseeable to the defendant.  Thus, for example, you may count for purposes of this element amounts of cocaine, crack cocaine and heroin possessed and sold by the defendant, and amounts of cocaine, also referred to as powder cocaine, crack cocaine and heroin that the defendant could reasonably foresee would be possessed and sold by all of his coconspirators during the course of the

conspiracy.  In calculating drug quantities, you may rely on direct as well as circumstantial evidence, and you may rely on the testimony of any witness on this issue.  I further instruct you that the government is not required to have seized or physically produced the controlled substances.

**JURY INSTRUCTION 41A**

**41A.  CONSPIRACY TO VIOLATE NARCOTICS LAWS FOR DEFENDANT McGILL**

Defendant Keith McGill is charged in Count One of his separate indictment, in case no. 02-045, with the same conspiracy charged against the other defendants, except that he is charged with conspiring to unlawfully, knowingly, and intentionally possess with intent to distribute and distribute a mixture and substance containing cocaine base, also known as crack.  He is not charged with conspiring to possess with intent to distribute or to distribute any other drug.  The remainder of Instruction 41 which sets forth the instructions regarding the elements of conspiracy to violate the narcotics laws, applies to Mr. McGill as well.

63

## JURY INSTRUCTION NO. 42

### 42.  CONSPIRACY TO PARTICIPATE IN A RACKETEERING INFLUENCED CORRUPT ORGANIZATION
### 18 U.S.C. § 1962(d)

Defendants Kenneth Simmons, Ronald Alfred, James Alfred, Franklin Seegers, Deon Oliver and Keith McGill are each charged with a specific form of conspiracy, that is, a conspiracy to violate the law prohibiting racketeer influenced and corrupt organizations, popularly known as the RICO statute.  I will refer to it as such in these instructions.  The indictment charges that from sometime in 1988 up through and including in or about November 2000, defendants Rodney L. Moore and Kevin L. Gray headed a criminal organization which was based in  the District of Columbia at various locations listed and that the defendants were members of or associated with that enterprise which engaged in drug trafficking and other activities affecting interstate commerce, and that they participated in the conduct of the affairs of the enterprise through what is called "a pattern of racketeering activity" in violation of the RICO law.

A RICO conspiracy is a combination or agreement of two or more persons who join together to try to accomplish an offense that would be in violation of the RICO statute.  The term "racketeering" in the RICO law is simply a term used in the statute and should not be regarded as having the  negative implications popularly associated with that word.

I will now instruct you on the elements of RICO.  To establish the offense of RICO conspiracy with respect to each defendant, the government must prove each of the following four elements beyond a reasonable doubt:

1.      That an "enterprise," in this case, an illegal association-in-fact, existed;

64

2.      That the "enterprise" engaged in or that its activities affected interstate commerce;

3.      That the particular defendant under consideration by you at the time knowingly and intentionally agreed with another person to conduct or participate in the conduct of the affairs of the "enterprise"; and

4.      That the defendant knowingly and willfully agreed that he or some member of the conspiracy would commit at least two of the acts referred to as "racketeering acts" which constitute a pattern of "racketeering" activity in furtherance of the conspiracy.

Proof of these four elements beyond a reasonable doubt is proof of a RICO conspiracy. Now, I will discuss each of the elements in more detail.

### First Element

The first element is that the government must prove the existence of an "enterprise" in order for you to find the defendants guilty of RICO conspiracy. The term "enterprise" includes a group of persons associated in fact even though their association is not recognized as a legal entity, such as a corporation or a partnership. A group or association of persons can be an "enterprise" if these individuals have joined together for the purpose of engaging in a common course of conduct over a period of time.

### Definition of Enterprise

An illegal association in fact, as defined by the first element of RICO conspiracy, may be established by evidence showing an ongoing organization, formal or informal, and by evidence that the individuals making up the association functioned as a continuing unit. Such an association of individuals may retain its status as an "enterprise" even though the membership of the association changes by the addition or loss of individuals during the course of its existence. In this case, the

indictment charges that an illegal association-in-fact "enterprise" existed, and that it was informal association of individuals involved in conspiracy to possess with intent to distribute and distribution of controlled substances, to commit murder, attempted murder and other acts of violence for the following purposes: to enrich the "enterprise" and its members; to create, maintain and control a market place for the distribution of its controlled substances; to enforce discipline among members of the "enterprise"; to protect the "enterprise" and its members from detection, apprehension and prosecution by law enforcement; to collect monies owed to members of the "enterprise"; to prevent and retaliate against acts of violence perpetrated against the "enterprise" and its members; and to promote and enhance the reputation and standing of the "enterprise" and its members.

<u>Second Element</u>

As to the second element of RICO conspiracy, the government must prove beyond a reasonable doubt that the "enterprise" engaged in or its activities affected interstate commerce. "Interstate commerce" means commerce between the states of the United States or between states and the District of Columbia. It is not necessary for the government to show that a defendant knew that the "enterprise" would affect interstate commerce or that he intended to affect interstate commerce. The evidence also need not show any particular degree of an effect on interstate commerce. Here, the indictment alleges the possession with intent to distribute and the distribution of controlled substances, including cocaine, also referred to as powder cocaine, cocaine base, also known as crack cocaine, marijuana and/or heroin.

The government presented evidence during the trial that some of the controlled substances allegedly possessed by the defendants originated outside of the District of Columbia. There was also evidence presented alleging that money was carried across state lines and that individuals crossed

state lines to purchase controlled substances in the District of Columbia. In addition, there was evidence adduced that members of the organization traveled across state lines to commit acts of violence and obtained several firearms which were transported to the District of Columbia where they were used in acts of violence. If you accept the government's evidence, you may find that the "enterprise" engaged in or its activities affected interstate commerce.

### Third Element

The government must prove that each defendant knowingly and intentionally agreed with another person or persons to conduct or participate in the conduct of the affairs of the "enterprise." In other words, the government must prove that each defendant agreed to take some part in the operation or management of the "enterprise." For this offense, the government does not have to prove that a defendant maintained a formal position in the "enterprise" or that the defendant was part of upper management. It is enough if the government proves beyond a reasonable doubt that the defendant, even if he is a lower-rung participant, participated in the operation or management of the "enterprise."

### Fourth Element

The government must prove beyond a reasonable doubt the defendant knowingly and willfully agreed that he or some member of the conspiracy would commit at least two so-called "racketeering" acts which would then constitute a pattern of "racketeering activity" in furtherance of the conspiracy. Again, an act is done willfully if done knowingly, intentionally, and deliberately. An act is done knowingly if it's done voluntarily and purposely, and not because of mistake, inadvertence, or accident.

The government must prove that the two or more racketeering acts that a defendant agreed

to commit or that another member or members of the conspiracy would commit constitute a pattern of racketeering activity. In order to do so, the government must prove that two or more acts of racketeering activity were connected with one another by some common scheme, plan, or motive so as to constitute a pattern. Conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, methods of commission, or are otherwise interrelated by distinguishing characteristics and are not mere isolated events.

"Racketeering activity" is defined in the RICO statute to include the crimes of conspiracy to violate the narcotics laws, possession with the intent to distribute controlled substances, acts involving robbery, and acts involving murder, including murder, conspiracy to commit murder, attempted murder and assault with intent to murder. In order for you to find a defendant guilty of the RICO conspiracy count, the government is not required to prove that the defendant himself personally committed a "racketeering" act; but the government must prove beyond a reasonable doubt and you must unanimously agree on which of at least two of the "racketeering" acts charged that either a particular defendant agreed to or at least personally commit, or that he agreed that another RICO coconspirator would commit. It is not sufficient that some members of the jury find a defendant agreed to at least two of the "racketeering" acts charged while other members find that the same defendant agreed to different racketeering acts. You must be unanimous as to which of at least two acts, if any, you believe that a particular defendant agreed upon.

In making this determination, you may consider all the racketeering acts alleged in the indictment regardless of whether a particular defendant is actually charged with having committed that racketeering act personally if you find that defendant to be vicariously liable upon one or more of the theories previously referred to and it was reasonably foreseeable to him.

68

The charges of conspiracy to commit murder are different from the other two conspiracy charges in the case; that is, the narcotics conspiracy in Count One and the RICO conspiracy. Under District of Columbia law, in order to convict a defendant of conspiracy to murder an individual, the government must prove beyond a reasonable doubt the following three elements:

1.      That on or about the date set forth in the indictment, an agreement existed between at least two people to kill the individual named in the Racketeering Act; and

2.      That the defendant knowingly participated in the conspiracy.

These are two of the elements of the offense. You should apply my earlier instructions to you concerning the law of conspiracy with respect to Count One when deciding upon the Racketeering Act of conspiracy to kill the named individuals. With respect to these particular charges, however, the District of Columbia law requires that the government prove beyond a reasonable doubt a third element; that is:

3.      That one of the people involved in the conspiracy did something for the purpose of carrying out the conspiracy. This is called an overt act. An overt act is any act that tends to help establish or further the purpose of the conspiracy. By itself, the overt act may be innocent in nature. Each of the Racketeering Acts alleging conspiracy to commit murder lists several overt acts that you must consider. It is not necessary for you to find that a defendant himself committed the overt acts listed in the Racketeering Act in order to convict him of conspiracy to commit murder. Rather, you need find only that one of the overt acts was committed by at least one of the persons in the conspiracy. Your decision as to which of the overt acts was committed must be unanimous. It is also not necessary for you to find that the conspiracy to

commit murder existed during the entire period of time alleged in the indictment. Rather, the government is required to prove beyond a reasonable doubt that an overt act was committed during the alleged period of time that the conspiracy to commit murder existed.

For each of the charged individual racketeering acts in the indictment, the government has alleged that the defendants agreed to commit a specific criminal act. You need not find that the defendants actually committed the criminal act which was the subject of that agreement. As I have instructed you with regard to Count One, a conspiracy to commit a crime is itself a crime. This is so because the essence of the offense is an unlawful agreement or understanding between two or more people to violate some law or laws, and it is against the law to agree with someone else to commit crime, even if the crime itself was never completed.

If you find that a defendant is guilty of a RICO conspiracy, when you complete the verdict form, you should check "Proven" on the Verdict Form the numbers of the two or more racketeering acts you found that the particular defendant agreed to personally commit or that he agreed another RICO co-conspirator would commit.

The same conduct may violate the narcotics conspiracy statute, RICO, and other federal and District of Columbia laws all at one time. It is neither inconsistent nor improper for the government to use part or all of the same body of evidence to prove a defendant's guilt of narcotics conspiracy, RICO conspiracy and other related and underlying separate federal and District of Columbia offenses.

## JURY INSTRUCTION NO. 43

### 43.  HOMICIDE — FIRST DEGREE PREMEDITATED MURDER WHILE ARMED
### 22 D.C. CODE SECTIONS 2401, 3202

In Count 30 of the indictment, defendants RONALD ALFRED and JAMES ALFRED is charged with the premeditated first degree murder while armed of Joseph Thomas on or about February 27, 1996.

In Count 45 of the indictment, defendant FRANKLIN SEEGERS is charged with the premeditated first degree murder while armed of Diane Luther on or about November 24, 1996.

In Count 53 of the indictment, defendants KENNETH SIMMONS and DEON OLIVER are charged with the premeditated first degree murder while armed of Richard Simmons on or about June 30, 1997.

In Count 64 of the indictment, defendant RONALD ALFRED is charged with the premeditated first degree murder while armed of Carlos Cardoza, Jr., on or about December 13, 1998.

In Count 68 of the indictment, defendant DEON OLIVER is charged with the premeditated first degree murder while armed of William Floyd on or about June 2, 1999.

In Count 70 of the indictment, defendant KENNETH SIMMONS is charged with the premeditated first degree murder while armed of Thomas Walker on or about July 22, 1999.

In Count 72 of the indictment, defendant RONALD ALFRED is charged with the premeditated first degree murder while armed of Anthony Watkins on or about August 9, 1999.

I'm going to instruct you on the charge of First Degree Premeditated Murder.  First degree premeditated murder is the killing of another person with the specific intent to kill that person,  and

with premeditation and deliberation. The essential elements of this offense, each of which the government must prove beyond a reasonable doubt, are:

1. That the defendant caused the death of the decedent;

2. That he did so with the specific intent to kill the decedent;

3. That he did so after premeditation;

4. That he did so after deliberation; and

5. That at the time of the offense he was armed with a firearm.

A firearm is a weapon that will expel a bullet by means of an explosive.

You are reminded that elements may be proven using principles of vicarious liability as I instructed you earlier in Instructions No. 39.

Specific intent to kill means purpose or conscious intention to cause death. Premeditation means forming an intent or design to kill. To premeditate is to give thought, before acting, to taking a human life, and then to reach a definite decision to kill. Deliberation means considering and reflecting on the preconceived design to kill, turning it over in the mind, giving it second thought. Although premeditation -- the formation of a design to kill -- may be instantaneous, as quick as thought itself, it is necessary that an appreciable time elapse between the formation of the design and the fatal act, within which there is, in fact, deliberation. The law requires no particular period of time. It necessarily varies according to the circumstances of each case. Consideration of the matter may continue over a prolonged period -- hours, days, or even longer. Then again, it may cover a span of minutes or less. After forming an intent to kill, if one does not act instantly, but pauses and actually gives second thought and consideration to the intended act, one has, in fact, deliberated. It is the fact of deliberation that is essential, not the length of time that it may have gone on.

You have heard evidence about the defendants' use of a weapon. If you decide that an individual defendant did use a weapon, you may consider the nature of the weapon, the way the defendant used it, and other circumstances surrounding its use. If use of the weapon under all of the circumstances would naturally and probably have resulted in death, you may conclude that the defendant had the specific intent to kill. Or, you may conclude that he had the specific intent to inflict injury or acted in conscious disregard of an extreme risk of serious bodily injury. But you are not required to reach any of these conclusions. Consider all the evidence in deciding whether the defendant had the state of mind required to establish guilt.

JURY INSTRUCTION NO. 44

## 44. MURDER WHILE ENGAGED IN OR WORKING IN THE FURTHERANCE OF A CONTINUING CRIMINAL ENTERPRISE
### 21 U.S.C. § 848 (E)(1)(A)

In Count 31 of the indictment, defendants RONALD ALFRED and JAMES ALFRED are charged with the murder of Joseph Thomas, a/k/a Froggy, on or about February 27, 1996, while engaged in or working in furtherance of a continuing criminal enterprise.

In Count 46 of the indictment, defendant FRANKLIN SEEGERS is charged with the murder of Diane Luther on or about November 24, 1996, while engaged in or working in furtherance of a continuing criminal enterprise.

In order for a defendant to be found guilty of murder while engaged in or working in furtherance of a continuing criminal enterprise, the government must prove each of the following elements beyond a reasonable doubt:

1.  That the defendants, Kevin L. Gray or Rodney L. Moore were operating a continuing criminal enterprise.  As you know, Kevin L. Gray and Rodney L. Moore are codefendants in this case.  Their cases are being handled separately from these defendants.  The defendants on trial here are not charged with the offense of operating a continuing criminal enterprise, but in order to find RONALD ALFRED, JAMES ALFRED, and FRANKLIN SEEGERS guilty of the offense of murder while engaged in or working in furtherance of a continuing criminal enterprise, you must first determine whether the government has proven the existence of such an enterprise as charged against Kevin Gray and Rodney Moore in Count 2 of the indictment;

74

2.      That the particular defendant or defendants intentionally killed the decedent, or

counseled, commanded, induced, procured or caused the intentional killing of the

decedent;

3.      That the particular defendant had the specific intent that the decedent be killed; and

4.      That the particular defendant did so while engaged in or working in furtherance of

a continuing criminal enterprise.

The government must prove as to the first element of this offense that the defendants, Kevin

L. Gray or Rodney L. Moore,  were operating a continuing criminal enterprise as charged in Count

2.   In Count Two of the Indictment, defendants KEVIN L. GRAY and RODNEY L. MOORE are

charged with unlawfully, knowingly, and intentionally engaging in a continuing criminal enterprise

in violation of 21 U.S.C. § 848.  This activity, too, is alleged to have occurred from sometime in

1988 until November, 2000.

First

As to this first element, I will now take a few moments to instruct you on the law regarding

a continuing criminal enterprise.  I remind you that since Kevin Gray and Rodney Moore are not on

trial here, you are not being asked to return verdicts with regard to them on the charge of operating

a continuing criminal enterprise.  This instruction merely relates to the first element of the charge

of murder while engaged in or working in furtherance of a  continuing criminal enterprise.

To find that Kevin L. Gray or Rodney L. Moore,  were operating a continuing criminal

enterprise, the government must prove:

1.      That the Kevin L. Gray or Rodney L. Moore committed a felony violation of the

federal drug laws; namely, the offense charged in Count One of the indictment: a

75

conspiracy with one or more other persons to distribute or to possess with the intent

to distribute the controlled substances alleged;

2.    That this felony violation was part of a continuing series of violations of the federal

drug laws;

3.    That the Kevin L. Gray or Rodney L. Moore undertook to commit this offense in

concert with five or more persons, either named or unnamed in the indictment;

4.    That the Kevin L. Gray or Rodney L. Moore occupied a position of organizer,

supervisor, or some other position of management with respect to these five or more

other persons, either named or unnamed in the indictment;

5.    That the Kevin L. Gray or Rodney L. Moore obtained substantial income or resources

from his activities in the continuing series of violations.

As I stated, the first question is whether Kevin L. Gray or Rodney L. Moore is guilty of the

conspiracy charged in Count One.

If you determine that either Kevin Gray or Rodney Moore is guilty of Count One, you must

then determine whether the violation was part of a continuing series of violations of the federal drug

laws.

Each of the following offenses are felony violations of the federal drug laws: distribution or

possession with intent to distribute any of the controlled substances cocaine, cocaine base, also

known as crack cocaine, and heroin; conspiracy to distribute or possess with the intent to distribute

those controlled substances; and unlawful use of a communication facility.

The term "series" means "three or more," and the term "continuing" means, "enduring,

subsisting for a definite period or intended to cover or apply to successive similar occurrences." To

find that the Kevin L. Gray or Rodney L. Moore committed a continuing series of drug violations, you must find beyond a reasonable doubt that he committed the offense charged in Count One, the conspiracy, plus two or more additional violations of the federal drug laws. The violations may be one or more of the drug offenses listed as an overt act in Count One. I will explain to you in a moment the elements of the drug offenses of possession with intent to distribute a controlled substance, and the elements of the crime of use of a communication facility to facilitate a drug offense.

In making this determination, you may also consider offenses committed by co-conspirators that are attributable to him as a member of the conspiracy -- if you have found that there was a conspiracy and that KEVIN L. GRAY and/or RODNEY L. MOORE was a member -- even if KEVIN L. GRAY and/or RODNEY L. MOORE did not commit the violations personally or was not even present at the time of the violation. A member of a conspiracy who commits another crime during the existence or life of a conspiracy and commits this other crime in order to further or somehow advance the goals or objectives of the conspiracy may be found by you to be acting as the agent of the other members of the conspiracy. Under these circumstances, a defendant who is then a member of the conspiracy may be held responsible for the illegal actions of this other member of the conspiracy in committing the other crime, even though the defendant himself did not personally commit the crime or was not present at the time the crime was committed.

Finally, you must unanimously agree on which three or more violations constitute the continuing series of violations.

Third, the government must prove that Kevin L. Gray or Rodney L. Moore committed these violations in concert with five or more persons. The phrase "in concert with five or more other

persons" means some type of agreement or joint action, whether direct or indirect, with at least five other persons who were involved in the continuing series of drug violations. It does not require proof that these persons actually had contact with each other, or knew each other, or committed each violation together, or operated together continuously at the same time. However, the government must prove beyond a reasonable doubt that the defendant and at least "five or more other persons" were part of an agreement or joint action to commit the continuing series of violations of the federal drug laws. The five additional persons may be other persons named in the indictment or persons not named in the indictment. Furthermore, you are not required to unanimously agree on the identities of the five or more persons with whom the defendant acted in concert; you simply must unanimously agree that the number of persons was five or more.

Fourth, the government must prove that Kevin L. Gray or Rodney L. Moore occupied a position of an organizer, a supervisory position, or some other position of management of the enterprise. An "organizer" is defined as a person who puts together a number of people engaged in separate activities and supervises them in their activities in one operation or enterprise. A person occupies a "supervisory position" if he manages, directs, or oversees the activities of others. In short, these words should be given their everyday, ordinary meaning.

You are further instructed that the government is not required to show that the other people worked directly for the defendant or that the person was paid a salary in order for you to find that the person was supervised by the defendant. The defendant need not have direct communication with the participant in order to be their supervisor. For example, the defendant (A) may delegate some work to a middleman (B) who in turn delegates the work to another person (C). The defendant (A) nonetheless would be the supervisor of (C), even though (A) might not even know (C).

Finally, the government must prove Kevin L. Gray or Rodney L. Moore derived substantial income or resources from this continuing series of federal drug law violations. The government does not have to prove that, over time, the defendant made any particular amount of money or was able to acquire any particular type or amount of property, nor must the government show that the defendant had a substantial amount of money available to him at the time of his arrest. But the government must show that the defendant did obtain substantial gross income or receipts from the illegal drug enterprise. Trivial amounts of income derived from occasional narcotics sales is not sufficient to satisfy this element. If you determine that the defendant received only small sums of money or other insignificant gain from drug-related activity, you must find him not guilty of Count Two. To support a finding that Kevin L. Gray or Rodney L. Moore were operating a continuing criminal enterprise, the government must prove that the defendant received what any reasonable person would consider to be considerable or ample funds from engaging in a continuing violation of the drug laws.

Proof that the defendant received substantial income or resources from the illegal enterprise can be based on direct or circumstantial evidence. Direct evidence may include prior statements of the defendant or a co-conspirator indicating receipt of substantial income or resources from the enterprise. You may also consider evidence from which you can infer a receipt of substantial income or resources, such as lavish spending with no visible, legitimate source of income. Additionally, evidence that the defendant possessed large amounts of a controlled substance is sufficient to prove this element, if you find beyond a reasonable doubt that the controlled substance had a substantial value.

Substantial income does not mean net income or profit, or that the defendant was able to

amass a certain amount of wealth at any one time, or accumulate a certain number of possessions. In sum, the term "substantial" should be given its everyday, ordinary meaning.

Second

In order to prove the second element of the offense, the government must prove beyond a reasonable doubt that the particular defendant killed the particular decedent, or counseled, commanded, induced, procured or caused the intentional killing of the decedent.

Third

In order to prove the third element of the offense, the government must prove beyond a reasonable doubt that the particular defendant did so with the specific intent to kill the decedent. Specific intent to kill means purpose or conscious intention to cause death. In this regard, you should consider and rely on my earlier instructions on proof of state of mind and transferred intent.

Fourth

In order to prove the fourth element of the offense, the government must prove beyond a reasonable doubt that decedent was killed while the particular defendant was working in furtherance of the continuing criminal enterprise, as described a moment ago. In other words, in addition to killing the decedent and having the specific intent to do so, the government must prove that the purpose of the particular defendant in killing the decedent was to further a then-existing continuing criminal enterprise, in the sense of promoting or protecting it. This means that the government must show that there was a connection between the continuing criminal enterprise and the murder. A murder committed by a defendant that is wholly unconnected to the continuing criminal enterprise, or which was simply coincidental to the continuing criminal enterprise is not a continuing criminal enterprise murder.

## JURY INSTRUCTION NO. 45

### 45.  VIOLENT CRIME IN AID OF RACKETEERING ACTIVITY
### 18 U.S.C. §§ 1959(a)(1)(3) & (5)

In Count 31, RONALD ALFRED and JAMES ALFRED are charged with killing Joseph Thomas, aka Froggy, on February 27, 1996, in aid of racketeering activity.

In Count 49, FRANKLIN SEEGERS is charged with attempting to murder Lincoln Hunter on November 24, 1996, in aid of racketeering activity.

In Count 54, KENNETH SIMMONS and DEON OLIVER are charged with killing Richard Simmons on June 30, 1997, in aid of racketeering activity.

In Count 65, RONALD ALFRED is charged with killing Carlos Cardoza, Jr. on December 13, 1998, in aid of racketeering activity.

In Count 69, DEON OLIVER is charged with killing William Floyd on June 2, 1999, in aid of racketeering activity.

In Count 71, KENNETH SIMMONS is charged with killing Thomas Walker on July 22, 1999, in aid of racketeering activity.

In Count 73, RONALD ALFRED is charged with killing Anthony Watkins on August 9, 1999, in aid of racketeering activity.

In Count 4 of the McGill Indictment, KEITH MCGILL is charged with attempting to murder Witness #6 (Charles Shuler) on December 15, 1999, in aid of racketeering activity

The essential elements of the offense of violent crime in aid of racketeering activity, each of which the government must prove beyond a reasonable doubt, are:

1.      That there existed, as charged in the indictment, an "enterprise engaged in

81

racketeering activity," as I have defined that term to you;

2.      That the defendants murdered, attempted to murder or assaulted with a dangerous weapon another living person;

3.      That the murder or attempted murder **or** assault with a dangerous weapon that I have just referred to were undertaken for the purpose of gaining entrance to, increasing, or maintaining the defendant's position in the enterprise or for the purpose of receiving money from the enterprise.

The first element that the government must prove beyond a reasonable doubt is that the "enterprise" alleged in the indictment existed. I have already discussed the enterprise in connection with a RICO Conspiracy and you should apply those instructions here as well. You must also find that this enterprise "engaged in racketeering activity." I have defined that term for you as well and you should apply those instructions here also.

The second element that the government must prove beyond a reasonable doubt is that on or about the dates charged in Counts 54, 65, 69, 71 and 73 the defendant(s) murdered the victims listed in those counts, and with respect to Counts 49, and Count 4 of the McGill indictment, that on or about the dates charged therein, the defendant(s), while armed with a pistol, attempted to murder the victims listed in those counts, in violation of D.C. Law.

In addition, with respect to Counts 49, and 4 of the McGill indictment, you will be asked to make findings as to whether the government proved beyond a reasonable doubt, that:

1.      The defendant used a firearm to commit assault; or,

2.      The defendant intended to cause serious physical injury in the commission of the assault.

A firearm is a weapon that propels a bullet by gunpowder or a similar explosive.

Serious physical injury means injury that:

1. creates a substantial risk of death; or

2. causes serious and permanent or serious and protracted loss or impairment of the function of any bodily member or organ.

The last element that I will instruct you on for this offense is the one which requires the government to prove beyond a reasonable doubt that the defendants acted for the purpose of receiving: (1) a promise or agreement to pay something of value from the enterprise or (2) gaining entrance to, maintaining, or increasing his position in the enterprise.

The words "promise or agreement to pay something of pecuniary value from the enterprise" should be given their ordinary meaning, that is, the defendant under consideration believed that he would derive something valuable from the enterprise for committing the crime.

In order to establish that the crime of violence was committed for the purpose of "gaining entrance to, maintaining, or increasing" a position in the enterprise, the government must prove that the defendant's general purpose in committing the crime was to gain entrance to, increase, or maintain his position in the enterprise. Self-promotion need not have been the defendant's only, or even his primary concern, if it was committed as an integral aspect of membership in the enterprise. The motive requirement is thus satisfied if the defendant committed the violent crime because he knew it was expected of him by reason of his membership in the enterprise, or that he committed it in furtherance of that membership, or because it would enhance his position or prestige within the enterprise. These examples are by way of illustration and are not exhaustive.

83

## JURY INSTRUCTION NO. 46

### 46.  KILLING OR ATTEMPTING TO KILL A WITNESS
### 18 U.S.C. § 1512(a)(1)(C)

In Count 47 of the indictment, defendant  FRANKLIN SEEGERS is charged with killing Diane Luther on or about November 24, 1996, with the intent to prevent her from providing information to authorities relating to the possible commission of a federal offense.

In Count 66 of the indictment, defendant RONALD ALFRED is charged with killing Carlos Cardoza, Jr. on or about December 13, 1998, with the intent to prevent him from providing information to authorities relating to the possible commission of a federal offense.

In Count 5 of the McGill indictment, defendant KEITH MCGILL is charged with attempting to kill Witness #6 (Charles Shuler) on or about December 15, 1999, with the intent to prevent him from providing information to authorities relating to the possible commission of a federal offense.

The essential elements of the offense of killing or attempting to kill a witness, each of which the government must prove beyond a reasonable doubt are :

1.    That the defendant killed or attempted to kill the victim charged in the Count;

2.    That the defendant was motivated by a desire to prevent the communication between the victim and law enforcement authorities concerning the commission or possible commission of an offense; and

3.    That the offense was actually a federal offense.

4.    That the defendant believed that the person described in element (2) above might communicate with the federal authorities.

The second and third elements relate to the nature of the offense or offenses which are the

84

subject of communication to law enforcement authorities.  The offenses must be federal.   That is the Government must prove beyond a reasonable doubt that a person might have communicated to law enforcement authorities information concerning a federal offense and that the defendant was motivated by a desire to prevent that communication.

The Government need not prove that such a motive was the sole motive for the defendant's action, but the Government must prove that it was a substantial motivating factor.  In fact, there need not be an ongoing federal investigation or even any intent on the part of federal authorities to investigate.

Nor must the Government prove that the defendant knew or believed that the offense was a federal offense or that the communication would be to a  federal officer. You may consider the fact that the offense is a federal offense in determining whether there might be communication with federal authorities.

JURY INSTRUCTION NO. 47

**47.  ASSAULT WITH INTENT TO COMMIT MURDER**
**D.C. CODE SECTIONS 22-503, 3202**

In Count 48 of the indictment, defendant FRANKLIN SEEGERS is charged with assault with intent to murder while armed in an assault upon Lincoln Hunter on or about November 24, 1996.

In Count 3 of the McGill indictment, defendant KEITH MCGILL is charged with assault with intent to murder while armed in an assault upon Witness #6 (Charles Shuler) on or about December 15, 1999.

The essential elements of the offense of assault with intent to commit murder, each of which the government must prove beyond a reasonable doubt, are:

1.    That the defendant made an assault upon the complainant;

2.    That he did so with the specific intent to kill the complainant; and

3.    That at the time of the offense, the defendant was armed with a firearm. A firearm is a weapon which will expel a bullet by means of an explosive.

The essential elements of the offense of assault are:

1.    That the defendant made an attempt or effort, with force or violence, to injure another person;

2.    That at the time he made an attempt or effort, he had the apparent present ability to injure that person; and

3.    That he made the attempt or effort voluntarily and on purpose, not by mistake or accident.

Injury means any physical injury, however small, including a touching offensive to a person of reasonable sensibility.  Specific intent to kill means purpose or conscious intention to cause death. I remind you that in evaluating the evidence in  this case, you may consider the principle of transferred intent.  Under this principle, where a person attempts to injure one person but injures another person or multiple people in the course of this attempt, then the intent of the person is transferred as a matter of law from the intended victim to the unintended victim or victims.

JURY INSTRUCTION NO. 48

## 48.  USING AND CARRYING A FIREARM IN RELATION TO A CRIME OF VIOLENCE OR DRUG TRAFFICKING OFFENSE
### 18 U.S.C. § 924(c)

Now I need to discuss the charge of using and carrying a firearm in relation to a crime of violence or drug-trafficking offense.  In Counts 76, 83, 84, 85, 87, 92, 94, 95, and 96 and Count 6 of the McGill indictment each of the defendants is charged with one or more counts of using and carrying a firearm in relation to a crime of violence or drug-trafficking offense.

The essential elements of the offense of using or carrying a firearm during and in relation to a crime of violence or a drug trafficking crime, each of which the  government must prove beyond a reasonable doubt, are:

1.    The defendant used or carried a firearm;

2.    That the defendant did so knowingly and intentionally; and

3.    That the defendant did so during and in relation to a drug-trafficking crime, or a crime of violence, or both.

Because this firearm count must have occurred during and in relation to a drug-trafficking crime or a crime of violence, and because the underlying crimes relied upon in each of these firearms counts are other counts in the indictment, you must first unanimously agree that a defendant is guilty of the particular underlying count as alleged in the indictment.  For example, if the count charges the defendant with using and carrying a firearm during an assault with intent to murder, you must have unanimously agreed that the defendant is guilty of assault with intent to murder. The term "during" as used above means at some point in the course of the crime of violence, regardless of how short a period of time, while "in relation to" means that there must be a relation between the firearm and

the underlying narcotics offense or crime of violence.

As to the other two elements -- that is, (1) that the defendant used or carried a firearm, and (2) that he did so knowingly and intentionally -- you are further instructed as follows: You are instructed that the word "use" means active employment of the firearm. A defendant uses a firearm when he actively employs it in some way that is related to the drug-trafficking crime or crime of violence that he is committing. "Use" may include brandishing, displaying, striking with, firing or attempting to fire, or making reference to a firearm in the defendant's possession, but mere presence of a firearm at the scene of the crime without active employment of that kind is not sufficient to constitute use of that firearm.

You are further instructed that the word "carry" means to bear on or about one's person. A firearm is carried on or about one's person if it is located in such proximity to the person as to be convenient of access or within reach. Thus, the phrase "carries a firearm" is not limited to carrying of firearms on the person; rather it is also satisfied by proof of dominion and control and ready accessibility to a gun during the drug-trafficking crime or crime of violence which the defendant is committing. For example, it would apply to a person who knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car, which the person accompanies. The term "firearm" includes any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The government need not prove that the firearm was loaded or operable. Unloaded and inoperable pistols can be a basis for a violation of this section if the other elements of the offense are met.

In determining whether a particular defendant is criminally responsible for the use or carrying of a firearm in relation to one of the alleged crimes of violence, you may consider whether that

defendant is vicariously liable for another person's use or carrying of a firearm, upon one or more of the theories previously referred to in Jury Instruction No. 39.

## JURY INSTRUCTION NO. 49

### 49.  USE OF COMMUNICATION FACILITY TO FACILITATE
### A DRUG TRAFFICKING OFFENSE
### 21 U.S.C. § 843(b)

Now I will instruct you on use of a communication facility.  In Counts 119, 123, and 128,

JAMES ALFRED  is charged with specific uses of a communication facility, that is, a telephone or

pager, to facilitate a conspiracy to unlawfully distribute or possess with intent to distribute cocaine,

cocaine base, heroin or marijuana.

The essential elements of this offense, each of which the government must prove beyond a

reasonable doubt are:

1.    That the defendant used a telephone or a pager;

2.    That the use of the telephone or pager was accomplished as part of the commission

    of or the causing or facilitating of the commission of the conspirators' conspiracy to

    distribute and possess with the intent to distribute a controlled substance; and

3.    That the defendant used the telephone or pager knowingly and intentionally.

A telephone call or the use of a pager facilitates the commission of an offense if it makes that

offense easier or if it assists in the commission of the offense.

## JURY INSTRUCTION NO. 50

### 50.  POSSESSION OF A CONTROLLED SUBSTANCE
### WITH INTENT TO DISTRIBUTE
### 21 U.S.C. § 841(a)(1)

Finally, I will instruct you on possession with intent to distribute a controlled substance.  In Counts 106 and 107, defendant FRANKLIN SEEGERS is  charged with possession with intent to distributed controlled substances on dates listed in the indictment.   The essential elements of this offense, each of which the government must prove beyond a reasonable doubt are:

1.     That the defendant possessed a controlled substance;

2.     That the defendant did so knowingly and  intentionally.  This means consciously, voluntarily and on purpose, not mistakenly, accidently or inadvertently; and

3.     That when the defendant possessed the controlled substance, he had the specific intent to distribute it.  Distribute means to transfer or attempt to transfer to another person.

The law makes heroin and cocaine base controlled substances.  You must decide whether the material in  question was heroin or cocaine base.  In doing that, you may consider all evidence that may help you, including exhibits and expert and non-expert testimony.  The government need not prove that the defendant possessed any particular numerical amount of heroin or cocaine, but it must prove beyond a reasonable doubt that he possessed a detectable or measurable amount of cocaine or heroin.

In Count 106, defendant  FRANKLIN SEEGERS is charged with possession with intent to distribute a mixture and substance containing a detectable amount of cocaine base, also known as crack cocaine.  If you find defendant SEEGERS guilty of that count of possession with intent to

distribute cocaine base, you must then make a determination as to the quantity of cocaine base involved in that offense.  You will be asked to complete a verdict form specifying whether the government has proven beyond a reasonable doubt whether the amount of cocaine base exceeded a specified quantity, expressed in grams.  The verdict form will ask you to decide whether the amount of cocaine base was 50 grams or more of mixtures and substances containing a detectable amount of cocaine base, or more than 5 grams but less than 50 grams of mixtures and substances containing a detectable amount of cocaine base.

Your decision if one of these drug quantity ranges has been proven beyond a reasonable doubt must be unanimous.  In determining quantity, you must determine the total weight of any mixture and substance that contains a detectable amount of cocaine base, also known as crack cocaine.  It is the entire weight of the mixture and substance that controls your determination.

## JURY INSTRUCTION NO. 51

## 51.  SELF-DEFENSE -- GENERAL CONSIDERATIONS [5.12]

Every person has the right to use a reasonable amount of force in self-defense if (1) s/he actually believes s/he is in imminent danger of bodily harm and if (2) s/he has reasonable grounds for that belief. The question is not whether looking back on the incident you believe that the use of force was necessary. The question is whether the defendant, under the circumstances as they appeared to him/her at the time of the incident, actually believed s/he was in imminent danger of bodily harm, and could reasonably hold that belief.

The defendant is not required to prove that s/he acted in self-defense.

Where evidence of self-defense is present, the government must prove beyond a reasonable doubt that the defendant did not act in self-defense. If the government has failed to do so, you must find the defendant not guilty.

# JURY INSTRUCTION NO. 52

## 52. SELF-DEFENSE -- AMOUNT OF FORCE PERMISSIBLE [5.13]

A. NONDEADLY FORCE

A person may use a reasonable amount of force in self-defense. A person may use an amount of force which, at the time of the incident, s/he reasonably believes is necessary to protect himself/herself from imminent bodily harm.

B. DEADLY FORCE

A person may use a reasonable amount of force in self-defense, including, in some circumstances, deadly force. "Deadly force" is force that is likely to cause death or serious bodily harm. A person may use deadly force in self-defense if s/he actually and reasonably believes at the time of the incident that s/he is in imminent danger of death or serious bodily harm from which s/he can save himself/herself only by using deadly force against his/her assailant.

C. EXCESSIVE FORCE (TO BE USED WITH EITHER DEADLY OR NONDEADLY FORCE)

Even if the other person is the aggressor and the defendant is justified in using force in self-defense, s/he may not use any greater force than s/he actually and reasonably believes to be necessary under the circumstances to save his/her life or avoid serious bodily harm.

In deciding whether the defendant used excessive force in defending himself/herself, you may consider all the circumstances under which s/he acted. A person acting in the heat of passion caused

95

by an assault does not necessarily lose his/her claim of self-defense by using greater force than would seem necessary to a calm mind. In the heat of passion, a person may actually and reasonably believe something that seems unreasonable to a calm mind.

## JURY INSTRUCTION NO. 53

### 53.  SELF-DEFENSE -- NO DUTY TO RETREAT [5.15]

The law does not require a person to retreat or consider retreating when s/he actually and reasonably believes that s/he is in danger of death or serious bodily harm and that deadly force is necessary to repel that danger. But the law does say that a person should take reasonable steps, such as stepping back or walking away, to avoid the necessity of taking a human life, so long as those steps are consistent with the person's own safety. In deciding whether the defendant acted reasonably, you should therefore consider whether the defendant could have taken those steps, consistent with his/her own safety.

JURY INSTRUCTION NO. 54

**54.SELF-DEFENSE -- PAST VIOLENCE BY COMPLAINANT OR DECEDENT** [5.17A2]

You have heard evidence about past acts of violence by Lincoln Hunter. You may consider such evidence as bearing on the likelihood that Lincoln Hunter threatened the defendant with imminent bodily harm, that is, on the issue of who was the aggressor.

## JURY INSTRUCTION NO. 55

### 55.  DEFENSE OF A THIRD PERSON [5.19]

Every person has the right to use a reasonable amount of force in defense of another person if (1) s/he actually believes that the other person is in imminent danger of bodily harm and if (2) s/he has reasonable grounds for that belief. The question is not whether looking back on the incident you believe that the use of force was necessary. The question is whether the defendant, under the circumstances as they appeared to him/her at the time of the incident, actually believed that the person s/he was seeking to defend was in imminent danger of bodily harm, and could reasonably hold that belief.

A person may use a reasonable amount of force in defense of another person, including, in some circumstances, deadly force. "Deadly force" is force which is likely to cause death or serious bodily harm. A person may use deadly force in defense of another person if s/he actually believes at the time of the incident that that person is in imminent danger of death or serious bodily harm from which s/he can save that person only by using deadly force against the assailant, and if his/her belief is reasonable.

Even if the defendant was justified in using force in defense of another person, s/he would not be entitled to use any greater force than s/he had reasonable grounds to believe and actually did believe to be necessary under the circumstances to save the other person's life or avert serious bodily harm.

In determining whether the defendant used excessive force in defending another person, you may consider all the circumstances under which s/he acted. The claim of defense of a third person is not necessarily defeated if greater force than would have seemed necessary to a calm mind was used by the defendant in the heat of passion generated by an assault upon a third person. A belief which may be unreasonable to a calm mind may be actually and reasonably entertained in the heat of passion.

The defendant is not required to prove that s/he acted in the defense of another person. If evidence of defense of another person is present, the government must prove beyond a reasonable doubt that the defendant did not act in the defense of another person. If you find that the government has failed to prove beyond a reasonable doubt that the defendant did not act in defense of another person, then you must find the defendant not guilty.

### JURY INSTRUCTION NO. 56

### 56.  DEFENDANTS' THEORIES OF THE CASE

Now I turn to the defendants' theories as to why they should be acquitted.  I should point out

that the defendants have the right to such an instruction and that you are to consider what I am about

to tell you in connection with my entire instructions to you.

**Kenneth Simmons.**  In this case, Mr. Simmons contends that the Government's proof fails

to show the existence of one overall conspiracy.  Rather, he claims that if any illegal agreements

existed, they were actually several separate and independent conspiracies, with various groups of

members and not the single ongoing conspiracy charged by the Government.

Whether there existed a single unlawful agreement, or many such agreements, or indeeed,

no agreement at all, is a question of fact for you, the jury to determine in accordance with these

instructions.

When two or more people join together to further one common unlawful enterprise, a single

conspiracy exists.  By way of contrast, multiple conspiracies exist when there are separate unlawful

agreements to further separate unlawful enterprises.  Unlawful enterprises may be separate even

though they involve similar criminal conduct like distributing cocaine base.

You may find that there was a single conspiracy despite the fact that there were changes in

either personnel by termination, withdrawal, or the addition of new members, or activities, or both,

so long as you find that some of the co-conspirators continued to act for the entire duration of the

101

conspiracy for the purposes charged in the indictment. The fact that the members of a conspiracy are not always identical does not necessarily imply that separate conspiracies exist.

On the other hand, if you find that the single conspiracy charged in the indictment did not exist, you cannot find any defendant guilty of the single conspiracy charged in the indictment. This is so even if you find that some conspiracy other than the one charged in this indictment existed, even though the purposes of both conspiracies may have been the same and even though there may have been some overlap in membership.

Similarly, if you find that a particular defendant was a member of another conspiracy, and not the one charged in the indictment, then you must find the defendant not guilty of the conspiracy charged. Therefore, what you must do is determine whether the conspiracy charged in the indictment existed. If it did, you must then determine the nature of the conspiracy and who were its members.

**Ronald Alfred.** Ronald Alfred contends that the government has not presented evidence of sufficient reliability to overcome the presumption of innocence beyond a reasonable doubt. With respect to the federal narcotics conspiracy alleged in Count One, Ronald Alfred argues that the government has not proven one single agreement with one common purpose as the government is required to do under the law. Ronald Alfred contends that he was not a member of a single overall conspiracy and was not invovled in an integrated, on-going, common effort to distribute controlled substances as alleged in Count One.

With respect to the RICO charge alleged in Count Three, Ronald Alfred claims that the

government has not proven the existence of an enterprise, as that term has been defined by the Court.

Ronald Alfred contends that the government has failed to prove that Ronald Alfred distributed

cocaine for the benefit of the alleged enterprise, as that term is defined by the Court. Furthermore,

as to the acts of violence in furtherance of the enterprise, the evidence cannot support an inference

that Ronald Alfred committed, attempted to commit, or aided and abetted the commission of any

violent acts on behalf of the enterprise.

As to the murder of Joseph Thomas, also known as Froggy, which is charged in Racketeering

Act No. 36 of the RICO Count and Counts 30, 31, and 76; the murder of Carlos Cardoza, which is

charged in Racketeering Act No. 54 of thd RICO Count and Counts 64, 65, 66, and 92; the murder

of Anthony Watkins, which is charged as Racketeering Act No. 60 of the RICO Count and Counts

72, 73, and 96; and the conspiracy to murder Andre Sanders which also charged in Racketeering Act

No. 60, Ronald Alfred contends that the government's evidence cannot support a finding of guilt

beyond a reasonable doubt.

**James Alfred.** Defendant James Alfred contends that the government has not presented

evidence of sufficient reliability to overcome the presumption of his innocence. With respect to the

federal narcotics conspiracy alleged in Count One, James Alfred contends that the government has

not proven that James Alfred shared in a common purpose with the other alleged conspirators as the

government is required to prove under the law. James Alfred contends that he was not a member

of a single overall conspiracy and was not involved in an integrated, on-going, common effort to

distribute controlled substances as alleged in Count One.

With regard to the RICO conspiracy, which is Count Three, James Alfred contends that the government has failed to prove that James Alfred distributed cocaine for the benefit of the alleged enterprise, as that term has been defined by the Court. Furthermore, as to the acts of violence in furtherance of the enterprise, Racketeering Acts 36 and 54, the evidence cannot support a finding that James Alfred agreed to commit or agreed to the commission of these acts by others.

As to the charges relating to the murder of Joseph Thomas, also known as Froggy, which are charged in Counts 30, 31, and 76, James Alfred asserts that the government's evidence cannot support a finding of guilt.

As to the use of a communication facility charges against him which are contained in Counts 119, 123, and 128, James Alfred contends that the evidence presented is insufficient to show that the alleged telephone calls facilitated the commission of any drug trafficking offense, which the government is required to prove beyond a reasonable doubt.

**Franklin Seegers.** Defendant Franklin Seegers contends he is not guilty of the crimes charged against him in the indictment. Mr. Seegers contends the Government has failed to present evidence of sufficient reliability to overcome the presumption of innocence beyond a reasonable doubt. Mr. Seegers further contends there was no evidence he participated in the narcotics conspiracy and the RICO conspiracy charged in the indictment. He further asserts that if the evidence proves the existence of any conspiracies at all, they were conspiracies among other persons,

and not Franklin Seegers.  As to other crimes alleged in the indictment, Mr. Seegers contends that

the crimes were not committed at all or were committed by others.

Mr. Seegers contends he did not participate in the alleged narcotics conspiracy and the overt

acts alleged against him have not been proven.

With respect to the alleged RICO conspiracy, Mr. Seegers contends the government has

failed to prove the existence of an enterprise, as that term is defined by the Court; failed to prove Mr.

Seegers' involvement; and failed to prove any of the alleged racketeering acts.

Mr. Seegers contends he is not guilty of all homicide and assault counts pertaining to the

murder of Diane Luther and the assault of Lincoln Hunter.  Mr. Seegers is specifically charged with:

> Diane Luther
>
> > First Degree Murder While Armed
> >
> > Continuing Criminal Enterprise Murder
> >
> > Killing a Witness
>
> Lincoln Hunter
>
> > Assault With Intent to Murder
> >
> > Attempted Murder in Aid of Racketeering Activity

Mr. Seegers contends that on the night of November 24, 1996, he acted in defense of Diane Luther

and in defense of his own safety against the aggression of Lincoln Hunter.  Mr. Seegers contends

the government failed to prove, beyond a reasonable doubt, that Mr. Seegers did not act in self-

defense or in defense of a third person.

Mr. Seegers contends he is not guilty of possessing a firearm during a crime of violence. Specifically, he contends Lincoln Hunter shot and killed Diane Luther and that Lincoln Hunter was shot in self-defense.

Mr. Seegers contends he did not possess, with the intent to distribute, cocaine base or heroin.

**Deon Oliver**. As to Count 1 of the Indictment charging a conspiracy to distribute or possess with intent to distribute controlled substances, Deon Oliver contends that he did not participate in a conspiracy as alleged, nor with the codefendants as alleged. His contention is that any evidence of possession of a controlled substance by Mr. Oliver has not been connected to any other person alleged to be a coconspirator in this case.

As to the allegation, that on September 11, 1996, in the 1300 block of 12th Street, N.W., in the District of Columbia that Deon Oliver possessed a loaded Jennings 9mm firearm that was recovered from a burgundy van, Deon Oliver denies ever possessing said firearm and knowledge of the existence of the firearm.

With respect to the allegation that on January 31, 1997, Deon Oliver possessed with the intent to distribute a quantity of cocaine, Deon Oliver admits that he possessed the cocaine with the intent to distribute it, but denies that his actions in obtaining the cocaine, possessing it and intending to distribute it had anything to do with the conspiracy with which he is charged. Further, he

contends, that he did not obtain the cocaine from any alleged member of the conspiracy and did not

intend to benefit the conspiracy from his possession and intent to distribute said cocaine.

With respect to the charges that Deon Oliver participated in the murder of Richard Simmons

on H Street, N.E. on June 30, 1997, Deon Oliver denies any involvement or participation of any

kind in this alleged act and denies that he aided and abetted anyone else in this act.  Furthermore,

Deon Oliver denies that he was at the place where the crime occurred at the time the crime occurred.

Deon Oliver denies any involvement in the murder of Willie Floyd on June 2, 1999.  Mr.

Oliver admits being on the scene of the murder at the time of the murder but denies knowing it was

about to happen, denies providing a weapon to anyone, denies having a weapon, at the time of the

incident, denies aiding and abetting anyone in the commission of the murder.

Deon Oliver denies attempting to kill a person named or nicknamed Rah-Rah.  He further

denies knowing who the person is that is alleged to be named or nicknamed Rah-Rah.  Mr. Oliver

denies any involvement of any kind whatsoever with a person named Oscar Veal, and certainly

denies attempting to solicit Oscar Veal to kill anyone.

**Keith McGill.**  It is defendant Keith McGill's position that he is innocent of the charges

leveled against him in this case in that he did not participate in the Kevin Gray drug conspiracy, nor

did he shoot or have any part in the shooting of Charles Shuler.  Defendant McGill contends that

the government has failed to prove the charges beyond a reasonable doubt.

## ALL DEFENDANTS

As to all Defendants, I charge you that you should consider their theory of the case with respect to each count in the indictment.  If the defendant's theory of the case causes you to have a reasonable doubt as to any or all counts charged against that defendant, then you must return a verdict of not guilty on that count or counts.  If, however, having considered all the evidence in the case and the instructions on the law, you are satisfied that the guilt of the defendant has been proven beyond a reasonable doubt with respect to any count or counts, then it is your duty to return a verdict of guilty with respect to that count or counts.

### III.   SPECIAL INSTRUCTIONS

### JURY INSTRUCTION NO. 57

### 57. SUMMARY CHARTS AND EXHIBITS

Charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence.  They are based upon testimony and evidence and are not themselves independent evidence.  Therefore, you are to give no greater consideration to these schedules or summaries than you would give to the evidence upon which they are based.  It is for you to decide whether the charts, schedules or summaries correctly present the information contained in the testimony and in the exhibits on which they were based.  You are entitled to consider the charts, schedules and summaries if you find that they are of assistance to you in analyzing the evidence and understanding the evidence.

## IV.   JURY DELIBERATIONS

## JURY INSTRUCTION NO. 58

## 58.   REDACTED DOCUMENTS AND TAPES [2.70]

During the course of this trial, a number of exhibits have been received in evidence, including statements and portions of statements of witnesses or other persons. Sometimes only those parts of a document or tape recording relevant to your deliberations are received in evidence. Where this has occurred, I have required the irrelevant parts of the statement to be blacked out or deleted. Only the relevant parts have been received in evidence and will be made available to you. Thus, as you examine the exhibits, and you see or hear a statement where there appears to be omissions, you should consider only the relevant portions that have been received in evidence. You should not guess or speculate about anything that has been taken out.

110

## JURY INSTRUCTION NO. 59

### 59. ELECTION OF A FOREPERSON [2.71]

That completes my discussion of the substantive offenses.  Now I want to give you a few instructions about how you will conduct yourselves as jurors.  Before you begin your deliberations, there are a few general matters relating to your deliberations upon which I must instruct you. When you retire to the jury room, you will select one from among your number to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson before the Court in the event there is any  matter about which you wish to communicate with the Court.

## JURY INSTRUCTION NO. 60

## 60. UNANIMITY [2.72]

The verdicts must represent the considered judgment of each juror.  In order to return verdicts, it is necessary that each juror agree to the verdicts.  Your verdicts must be unanimous. You should feel free, however, to consider and deliberate on the count or counts against each defendant in any order that you prefer.  There is no requirement that you consider the charges against a specific defendant in any particular order or, indeed, that you consider the defendants themselves in any particular order, so long as you reach a unanimous verdict on all counts as to each defendant. A verdict must represent the considered judgment of each juror.  As you know, your verdict on each count must be unanimous.  Each juror must agree on it. It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement if you can do so without doing violence to your own individual judgment.

Each of you must decide the case for himself or herself, but you must do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced that your opinion is erroneous.  On the other hand, do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or merely to return a verdict.  Remember at all times that you are not partisans; you are judges of the facts.

112

JURY INSTRUCTION NO. 61

61. EXHIBITS [2.73]

I am not sending all of the exhibits that have been received in evidence with you as you retire for your deliberations; however, you are entitled to see any or all of these exhibits as you consider your verdict. I suggest that you begin your deliberations, elect your foreperson, and then, if it would be helpful to you, you might ask for any or all of the exhibits simply by sending me a note from your foreperson to me through one of the marshals who will be outside your door during your deliberations. The exhibits that have been entered into evidence are labeled with letters and numbers. The system of labeling and numbering exhibits is simply to help the parties organize the presentation of the case. You are to attach no particular significance to the system employed to label certain exhibits with letters and numbers or the fact that some exhibits are not in sequence.

## JURY INSTRUCTION NO. 62

## 62.   COMMUNICATIONS BETWEEN COURT AND JURY DURING JURY'S DELIBERATIONS [2.75]

If it becomes necessary during your deliberations to communicate with the Court, you may send a note by the marshal signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me by any means other than a signed writing from the time you begin your deliberations, and I will not communicate with any member of the jury on any subject touching on the merits of the case except in writing or orally here in open court once you begin your deliberations.

If I get a note from you, I am going to respond here in the courtroom with counsel and all parties present.  Everybody is entitled once you begin your deliberations to know any communications that we have between us. Bear in mind that you are never to reveal to any person, not even to the Court, how the jury stands, numerically or otherwise, on the question of guilt or innocence of any of the defendants until after you have reached a  unanimous verdict.

114

## JURY INSTRUCTION NO. 63

### 63.  MEDIA REPORTS

I instructed you earlier during this trial that you are to ignore any reports in the newspaper or on radio or television concerning this case.  While you deliberate, there may be reports in the newspaper or on radio or television relating to this case.  Again, as I instructed you earlier, please make sure you do not read, listen to, or watch any of the reports.  You must decide this case solely on the evidence presented in this courtroom.  You must consider only evidence that meets certain standards in reaching your verdict.  For example, a witness may testify about events he himself has seen or heard, but, except as I have held to be admissible as an exception to the hearsay rule, he generally may not testify about matters that others have told him about.  Also, witnesses must be sworn to tell the truth and must be subject to cross-examination.  News reports about this case are not subject to these standards, and if you read, listen to, or watch these reports, you may be exposed to misleading or inaccurate information that unduly favors one side of the case and to which the other side is unable to respond. Therefore, you must completely disregard any press, television, or radio reports that you may read,  see, or hear.  Such reports are not evidence and you should not be influenced in any manner whatever by such publicity.

## JURY INSTRUCTION NO. 64

### 64.  VERDICT FORM [2.77]

As I indicated earlier, a form of verdict has been prepared for your convenience.  You will take this form to the jury room, and, when you have reached unanimous agreement as to your verdicts as to each defendant, you will have your foreperson fill in, date, and sign the form to state the verdict upon which you unanimously agree, and then return with your verdict to the courtroom.

## JURY INSTRUCTION NO. 65

### 65. FURNISHING JURY WITH A COPY OF INSTRUCTIONS [2.76]

I will provide each of you a written copy of my instructions. During your deliberations, you may, if you want, refer to these instructions. Although you may refer to any particular portion of the instruction, you are to consider the instructions as a whole, and you may not follow some and ignore others. The fact that you have been provided with a copy of my instructions should not discourage you from making an inquiry regarding the meaning of these instructions if necessary. Please return the instructions to me when your verdict is rendered.

## JURY INSTRUCTION NO. 66

### 66.  COURT PROCEEDINGS DURING DELIBERATIONS

I do like to talk a little bit about how court will convene while you deliberate.  First, during

the period of deliberations, we will convene in court each day the same way we have, generally

Monday through Thursday, 9:30 to 5.  You will deliberate at your pace, you decide how much time

it takes you to fairly and  impartially consider each of the counts that you will be presented on the

verdict form.  The verdict form is lengthy, I'll warn you up front.  There are lots of "racketeering

acts" and all these other things where you have to make specific findings of either proven or not

proven, and all those will be places on the form as well as forms where the foreperson will fill in

either guilty or not guilty as to each of the counts in the indictment, and there will be some places

where you have to fill in your findings on amounts of drugs involved as well, as I told you in the

instructions.  So I expect it will take you some time to fairly and impartially arrive at a fair verdict

in this case.

During the course of that time, we will convene each day at 9:30 and close at 5.  I won't

reconvene in the courtroom with everyone present unless I have a note from you that I need to

respond to.  Most of the time, you will be able to begin your deliberations here and then stop at 5

o'clock. You cannot, however, have any deliberation whatsoever or any discussion of the case

unless all twelve of you are present.  You can't have any separate discussion or deliberations unless

all twelve are present.  Once all twelve are present, then your foreperson can say, we can begin the

118

discussions.  And at the end of the day when your foreperson says you're going to stop for the day,

again, you can't have any discussion unless all twelve of you are present.  That's the only rule you

really have to follow during the time of your deliberations.

As I said, during the time of your deliberations, if I have a note from you, I'll respond, but

I will give counsel an opportunity to comment on what my response will be before I respond.  So

sometimes there may be some delay in responding to your note until I get all counsel here and have

a hearing on what I should say to you because they're entitled to know what I am going to say.

## JURY INSTRUCTION NO. 67

### 67. TAKING THE VERDICT

I would like to talk about one other subject now, and that is when you return to the courtroom with your verdict, the foreperson will bring the verdict form into the courtroom with you. The marshal, when I ask for it, will take the verdict form from the foreperson and hand it to the deputy clerk. The deputy clerk will then do what we call publish the verdict. The deputy clerk will read out loud the verdict that you have entered. Now, I gave you an instruction in here that you can return a verdict as to any defendant and as to any count any time you decide you want to return a verdict if unanimous. It's up to you how you want to go through that. But at any point when you have returned a verdict, either full or partial, the verdict would be announced in open court by the deputy clerk reading it. At that point, just so you know how it works, the clerk will say to the foreman, is that the verdict as just announced? Hopefully you will all say yes.

Any party can ask that the jury be polled on the verdict as just announced. If there is a request for a poll, I then direct the clerk to poll the jury. The clerk then says, do each of you agree with the verdict as just announced and will say Juror Number 1. Hopefully Juror Number 1 will say yes, and then the clerk will say, Juror Number 2. We just go all down the line until all twelve jurors have been polled. Hopefully all twelve will say yes. If anyone says no, my job is easy. We don't have a unanimous verdict and I ask you to retire to the jury room and come back when you have a unanimous verdict. That's all polling the jury is, though, just so you know how the process

120

works when you come back. Let me see counsel at the bench now to see if there are any other matters we need to cover.

## JURY INSTRUCTION NO. 68

### 68.  ALTERNATE JURORS

While you alternate jurors will not begin deliberations with the 12 regular jurors, it is possible that one or more of you could be called to deliberate at some future time.  Because that possibility exists, you are instructed that you should continue to follow my instruction not to discuss this case with anyone at any time.  The Court will notify you when the jury has completed its deliberations.  When that occurs, your jury service will be discharged and you will be free to discuss the case.

122